B. LILES et al. v. J. ROWAN ROGERS et al.

*Subrogation—Sureties on Official Bonds.*

1. Subrogation is the substitution of another person in the place of a creditor, so that the former can succeed to the rights of the latter in relation to the debt, and to entitle one to such equitable relief, he must have paid the money upon request or as surety or under some compulsion made necessary by the adequate protection of his own rights.

2. Where several or successive obligations of suretyship be not in substance and nature for the same thing, and have no relation to or operation upon each other, the doctrine of subrogation cannot be invoked.

3. Where a Sheriff who had given separate bonds, one for the collection of State taxes and the other for county taxes, settled the first by using some of the funds collected for county taxes, and the sureties on the county tax bond were forced to make good the default of the Sheriff thereon, such sureties, in the absence of knowledge on the part of the State Treasurer or of the sureties on the State tax bond, of the misapplication of funds, cannot recover the amount so misapplied from the State tax bond sureties, since the latter's bond was extinguished by performance and the State could not have been compelled to refund the money, nor could have revived the sureties' liability if the amount had been refunded.

CIVIL ACTION, heard on demurrer to complaint before *Brown, J.,* at April Term, 1893, of WAKE Superior Court.

The demurrer was sustained, and plaintiffs appealed.

The purpose of the action and the facts are stated in the opinion of Chief Justice SHEPHERD.

*Messrs. Armistead Jones* and *Battle & Mordecai*, for plaintiffs (appellants).

*Messrs. Busbee & Busbee, Batchelor & Deverevx* and *J. C. L. Harris*, for defendants.

SHEPHERD, C. J.: This case comes before us on demurrer to the complaint, from which it appears that the defendant Rogers, as Sheriff of the county of Wake, executed three bonds to the State, one conditioned upon the payment and collection of county taxes, one conditioned upon the payment and collection of State taxes, and the other conditioned upon the due execution of process, etc. It further appears that the Sheriff, being engaged in the collection of said taxes, used a part of the money collected by him as county taxes in his settlement of the State taxes with the State Treasurer, but it is not alleged that the State Treasurer or the defendant sureties to the State tax bond had any knowledge whatever of the misapplication of the said money. This action is brought by the sureties on the county tax bond against the sureties on the State tax bond, and the prayer is that the defendants be required to "refund" to the plaintiffs the sum of twenty-seven hundred dollars, the amount misapplied by the said Sheriff.

Conceding for the purposes of the argument that the Sheriff held the money in the character of a trustee, it is very plain that it cannot be followed into the hands of the defendant sureties, as it does not appear that any part of the said money ever came into their possession. In the absence, therefore, of any averment connecting them with the alleged breach of trust, their liability, if any, must result from their contractual relations with the State. It is only through this medium that the plaintiffs can look for relief, and hence it is insisted that they are entitled to recover upon the principle of subrogation.

Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. Sheldon on Subrogation, § 1. The doctrine is distinctly a creature of equity, and the ground of relief does not stand entirely upon the notion of mutual consent, either expressed or implied. *Brinson* v. *Thomas*, 2 Jo. Eq., 414; 1 Story Eq. Jur., 472; Beach Modern Eq. Jur., 797. The principle is applied where the person claiming its benefit has been compelled to pay the debt of a third person in order to protect his own rights or to save his own property. Accordingly it has been held that the sureties on the official bond of an insolvent Sheriff, who had been compelled to pay money collected by a defaulting deputy, may recover of the sureties on a bond given to the Sheriff by the deputy, conditioned upon the faithful performance of his duties. Brinson's case, *supra*. The doctrine applies also for the benefit of a purchaser who has extinguished an incumbrance upon the estate which he has purchased; of a co-obligor or surety who has paid the debt which ought to have been met by another, and in other cases of a similar character to be found in the reports and text-books. While it is true that privity is not in all cases necessary, still to entitle one to relief he "must have paid the money upon request or as surety, or under some compulsion made necessary by the adequate protection of his own right." Beach, *supra*, 801. It has therefore been held that if several or successive obligations of suretyship be not in substance and nature for the same thing, and have no relation to nor operation upon each other, the doctrine of subrogation cannot be invoked. *Langford* v. *Perrin*, 5 Leigh, 552.

Tested by these general principles, it would seem that the plaintiffs are not entitled to the relief prayed for, since it is not pretended that they or anyone pursuant to their directions have actually paid any money for the benefit of the

defendant sureties, or that by reason of their contractual obligations or otherwise they were in any manner compelled to do so. Extending to them, however, the doctrine insisted upon, let us consider whether it can aid them in the present action.

As soon as a surety has paid the debt an equity arises in his favor to have all of the securities which the creditor holds against the principal debtor transferred to him, and to avail himself of them as fully as the creditor could have done. The securities referred to do not include those which are extinguished by the payment of the debt, such as the bond securing such principal debt, and unless the surety procures it to be assigned for his benefit to a third person, it is utterly extinguished both at law and in equity, and he becomes a simple contract creditor (*Briley* v. *Sugg*, 1 Dev. & Bat. Eq., 366; *Sherwood* v. *Collier*, 3 Dev., 380; *Hodges* v. *Armstrong, ibid*, 253; *Tiddy* v. *Harris*, 101 N. C., 589) and entitled to be subrogated only in respect to the collateral securities taken and held by the creditor. *McCoy* v. *Wood*, 70 N. C., 125. Indeed the whole doctrine of subrogation is predicated entirely upon the discharge of the original obligation. Sheldon, *supra*, and Beach, *supra*, 798. This principle is well established in this State, and is fully sustained by the English decisions prior to the enactment of the Mercantile Law Amendment Act, 19 and 20 Vict. Thus in *Copes* v. *Middleton*, 1 Turn., 231, Lord Eldon said: " The general rule therefore must be qualified by considering it to apply to such securities as continue to exist and do not get back upon payment to the person of the principal debtor. In the case, for instance, wherein, in addition to the bond, there is a mortgage with a covenant on the part of the principal debtor to pay the money, the surety paying the money would be entitled to say, 'I have lost the benefit of the bond, but the creditor has a mortgage and I have a right to the benefit of the mortgaged estate which has not got back to the debtor.'" So also Lord Brougham in

*Hodgson* v. *Shaw*, 3 M. and K., 190, observes: "Thus the surety paying is entitled to every remedy which the creditor has. But can the creditor be said to have any specialty or any remedy on any specialty after the bond has gone by payment?" So it is said by Beach, *supra*, 811: "It was formerly (prior to the act above mentioned) the rule in England that a surety could have no right of subrogation to such securities as were extinguished by the payment of the debt, such as the bond securing the principal debt."

While many of the American Courts have conformed their rulings upon this subject to the principle declared by the Act of Victoria, *supra*, this Court and the Courts of Alabama, Vermont, and perhaps other States, continue to follow the original doctrine as declared by the Courts of England, the only modification of the rule in North Carolina being in favor of a surety who has paid the debt of a *deceased* principal. Rev. Code, ch. 110; *The Code*, § 2096. According to these principles, the bond to which the defendants were sureties was discharged by the payment and settlement made with the State Treasurer, and cannot be revived in favor of the plaintiffs.

It is further to be observed that the party for whose benefit the doctrine of subrogation is invoked and exercised can acquire no greater rights than those of the party for whom he is substituted, and if the latter had not a right of recovery the former can acquire none. Sheldon, *supra*, § 6; *Clark* v. *Williams*, 70 N. C., 679. Could the State, after the settlement with the Sheriff of the State taxes, have revived the liability of the defendants by refunding the money? The answer to this question depends upon whether the money could have been recovered of the State, and it is settled by abundant authority that, in the absence of notice of the misapplication, no such recovery could have been had. Where a trustee illegally transfers trust funds it is essential to their recovery that the person receiving them should have taken them with

actual notice, or under such circumstances as would put him upon inquiry. *Bunting* v. *Ricks,* 2 Dev. & Bat. Eq., 130; *Lockhart* v. *Phillips,* 1 Ired. Eq., 342; *Gray* v. *Armistead,* 6 Ired. Eq., 74; *Polk* v. *Robinson,* 7 Ired. Eq., 235. In the present case there was no notice, either actual or constructive, and a settlement was made in consideration of the payment. This settlement had the effect of discharging the defendant sureties, and the State having, on the faith of the payment, parted with its security, could have resisted a recovery. If this be so, it could not voluntarily refund the money and recover of the defendants. The State, therefore, having no right to recover of the defendants, there is nothing to which the plaintiffs can be subrogated.

Suppose the defendant Rogers had borrowed money from a bank and given these defendants as sureties on the note, and when the note matured he had paid it with county funds in his hands, without the knowledge of the bank or of the defendants, could the sureties on the county tax bond of Rogers have recovered of sureties to the note which had thus been discharged? Very clearly not, and such a case differs in nothing, we think, from the case before us. This may appear to be very hard on the plaintiffs, but it is, we hear, a common practice for Sheriffs to settle with the State out of the county tax funds, and it is better that sureties who assume such risks should suffer by reason of the unfaithfulness of their principals than that the Court, in the effort to extricate them, should disregard well settled principles and introduce uncertainty and confusion into the administration of the laws.

After a careful consideration of the case, we are unable to see how this action can be maintained. The judgment of his Honor, therefore, must be                    Affirmed.