FIDELITY CO. v. JORDAN.

(Filed February 16, 1904).

1. JURISDICTION—*Exceptions and Objections—Waiver—Appeal—Demurrer.*

    An objection to the jurisdiction, though waived in the court below, may be taken in the supreme court.

2. JURISDICTION—*Superior Court—Subrogation—Equity.*

    The superior court has jurisdiction of an action by a creditor seeking to be subrogated to the rights of other creditors of the same debtor, whose claims he had paid.

3. SUBROGATION—*Principal and Surety.*

    Where a surety prays a judgment against his principal, he may recover any funds wrongfully converted or misapplied by the principal.

4. SUBROGATION—*Pleadings—Principal and Surety.*

    The complaint in this action for subrogation does not sufficiently locate the funds sought to be recovered.

5. AMENDMENT—*Pleadings—Demurrer—The Code, sec. 273.*

    Where a demurrer to a complaint is sustained, the trial judge may allow an amendment to the complaint.

ACTION by the Fidelity and Deposit Company against William Jordan and another, heard by *Judge M. H. Justice*, at Fall Term, 1903, of the Superior Court of HERTFORD County. From a judgment for the plaintiff, the defendant appealed.

*Pruden & Pruden* and *Shepherd & Shepherd,* for the plaintiff.

*Winborne & Lawrence* and *George Cowper,* for the defendant.

FIDELITY CO. *v.* JORDAN.

WALKER, J.   This action was brought by the plaintiff in the Court below for the recovery of $197.86, and was tried upon demurrer to the complaint.   The plaintiff, a corporation, alleged that, at the request of John F. Newsome, Clerk of the Superior Court of Hertford County, it became surety on his official bond, as it was authorized by law to do, in the sum of $15,000 with the usual conditions; that said Newsome, as Clerk and receiver, by virtue of his office, received large sums of money to be held by him for several parties and a large part thereof he deposited in bank to his credit as "Clerk and receiver."   That he defaulted and misapplied the trust funds so held by him to the amount of nearly $18,-000, and thereafter, he having died, a judgment was recovered against his administratrix and the plaintiff, his surety for $909.80, which amount and the further sum of $507.75, which he had also converted or misapplied, the plaintiff was compelled to pay as surety.   That prior to his death, the said Newsome being individually indebted to the defendants, gave them a check drawn by him as "Clerk and receiver" to their order on the bank in which the trust funds had been deposited for the sum of $197.86 in payment of said indebtedness, and the check was afterwards paid to them out of the trust funds.   The defendants had no claim upon the said funds, and knew at the time they received the check and the money paid thereon that the giving of the check was a misappropriation of the trust funds by Newsome.   It is then alleged "that the plaintiff is advised and believes, and so avers, that it is subrogated to the rights of those whose debts against the said Clerk and receiver it has paid, and is entitled to recover in this action of the defendants the sum received by them as aforesaid of John F. Newsome, deceased."   The plaintiff demands judgment for the sum of $197.86 and the costs.

The defendants demurred, substantially, upon the following grounds:

1. That the Court has no jurisdiction of the action.

2. It appears from the complaint that the plaintiff paid the alleged fiduciary claims for money wrongfully converted by his principal, without having the same assigned to it, and thereby discharged the same, and for this reason it has no legal or equitable demand against the defendant by subrogation or otherwise.

3. That the plaintiff, in its complaint, does not state a cause of action because, first, it does not appear that plaintiff is subrogated to the rights of any person or persons having any cause of action against the defendants; second, it is not stated to whom the plaintiff paid the said money or how much he paid to any one person, nor does it appear by proper averment to whose right the plaintiff seeks to be subrogated.

The demurrer was overruled and judgment rendered for the plaintiff, to which the defendants excepted and appealed.

The objection to the jurisdiction was waived in the Court below, but the defendant's counsel insisted upon it in this Court, as he had the right to do. We think, however, that it is without any merit. The cause of action attempted to be set up by the plaintiff is equitable in its nature and can be enforced only in the Superior Court. The court of a justice of the peace has no jurisdiction by which it can affirmatively administer an equity. This has been repeatedly decided. *Berry v. Henderson,* 102 N. C., 525, and cases cited. While it is a court for the enforcement of remedies merely legal, it may so far recognize an equity involved in any action pending before it as to permit it to be pleaded as a defense. *Bell v. Howerton,* 111 N. C., 69; *McAdoo v. Callum,* 86 N. C., 419.

The defendants next contend that the plaintiff having paid the judgment recovered against it and the other part of the

debt due by its principal, without having taken an assignment to itself for the same from the creditors, has thereby discharged the indebtedness and deprived itself not only of the right to enforce payment of the particular judgment and claim thus discharged by it, but has also lost all right to be substituted in the creditors' place to all collateral rights and securities to which the creditors were entitled or which they held at the time of the payment, and that by the payment it became merely a simple contract creditor of its principal, without any security for its debt, and its only remedy is by personal action against the administrator to recover the amount so paid by it. It is very true, that in order to enforce the payment of a judgment obtained upon the debt or to recover upon a debt in its original form, if it has not been reduced to judgment, it is necessary that the surety when he pays the debt, however it may be evidenced, should have it assigned to a third person in trust for his benefit, and if such an assignment is taken, the debt is kept on foot, although the money be paid to the creditor by the surety, and its vitality is preserved even at law and much more in equity, and he may enforce payment of it just as the creditor could have done before the payment was made. *Hanner v. Douglass,* 57 N. C., 262. But it is not required that this should be done in order to preserve the collateral remedies or securities of the creditor. It is only the debt or security upon which the judgment has been taken, or the note or other instrument given to the creditor as evidence of the indebtedness that is discharged by the payment, and in such a case an equity arises at once in favor of the surety making the payment to have all the securities held by the creditor, and which have not been extinguished by the payment of the debt, such as the bond securing the principal debt, transferred to him, and he is entitled to be subrogated to all the rights and remedies which the creditor has against the debtor and to avail him-

self of them as fully in every particular as the creditor
could have done. This principle of equity we consider as
well settled by the authorities. *Liles v. Rogers,* 113 N. C.,
197, 37 Am. St. Rep., 627. The distinction we have drawn
is clearly and tersely stated by *Rodman, J.,* for the Court, in
*McCoy v. Wood,* 70 N. C., 125, as follows: "The law is that
if a surety pays the bond of his principal for which there is
no collateral security, the bond is thereby extinguished, un-
less he takes an assignment to a trustee. But in equity it is
held that if the creditor has taken 'a collateral security for the
debt, the surety, on payment, is subrogated to the rights of
the creditor in the security without an express assignment."
While the original debt, whether in the form of a judgment or
a bond, is discharged by the payment, the surety becomes a
simple contract creditor of his debtor, and to this new rela-
tion equity attaches what is called the right of subrogation,
which is defined to be the substitution of one person in the
place of another, whether as a creditor or the possessor of
any other rightful claim, and the substitute is put in all re-
spects in the place of the party to whose rights he is subro-
gated, the principle having been adopted from the civil law
by courts of equity. It is treated as a creature of equity, and
is so administered as to secure real and essential justice with-
out regard to form and independent of any contractual rela-
tions between the parties to be affected by it. It is broad
enough to include instances in which one party pays the debt
for which another is primarily answerable, and which, in
equity and good conscience, should have been discharged by
the latter." Sheldon on Subrogation, p. 2. By another, the
doctrine of subrogation is said to be distinctly a creature of
equity, having its basis in natural justice irrespective and
independent of rules and forms of law. But in equity no
contract is necessary upon which to base the right; it is a
remedy which a court of equity seizes upon in order to ac-

complish what is just and fair between the parties, where a party who is seeking the aid of the Court and the benefit of the rule has been no mere volunteer, and where his action has been based upon general equitable rules which it is the particular province of a court of equity to enforce. "Subrogation is the substitution of one who, under the compulsion of necessity for the protection of his own interest, has discharged a debt for which another is primarily liable, in the place of the creditor, with all the security, benefits and advantages held by the latter with respect to the debt. One of the prerequisites to the exercise of the right is the complete discharge of the debt. 2 Beach Mod. Eq. Jur·, secs. 797 and 798.·

In conformity to this established doctrine it has been held that the sureties of an insolvent Clerk of the Court, upon a breach of trust by their principal, will in equity be entitled to all the remedies and securities that belong to a *cestui que trust,* or creditor, against one who co-operated in the breach of trust. *Bunting v. Ricks,* 22 N. C., 130, 32 Am. Dec., 699; cited and approved in *Powell v. Jones,* 36 N. C., 337.

The case of *Fox v. Alexander,* 36 N. C., 340, seems to be directly in point as an authority in support of the doctrine that when a surety has paid a judgment against his principal (in that case a guardian), he may by action follow and recover any of the fund which has been wrongfully converted or misapplied by the principal and which has been received from him by a third person with notice of its fiduciary character in payment of a debt due him from the surety's principal, even though the judgment, which was obtained against the surety and his principal on account of the breach of trust, has been paid and discharged. In that case the guardian transferred to the defendant in payment of the debt due to him a note payable to himself as guardian. The ward recovered judgment against his guardian for the amount of his

134——16

defalcation, the bond transferred to the defendant being a part of the trust property which was misapplied by the guardian and for which misapplication the judgment was given. This judgment the sureties paid without having any assignment made to a third person for their benefit. It was held that as the sureties had thus been compelled to pay the ward the amount due to him, they had the right in a court of equity to stand in his place and follow the trust fund in the hands of the defendant and to have satisfaction of him to the amount thereof. This case, it would seem, is a full and complete answer to the contention of the defendant's counsel, and sustains the plaintiff's right to a recovery if it has made the necessary allegations to raise this equity of subrogation in its behalf. While it may be needless for us to cite authorities to show that the defendant is liable to account for the money received by him on the check, upon the ground that he is constructively a trustee of the same, having received it with full notice that it was part of the trust fund, the principle upon which such a liability rests is fully discussed in the following cases: *Edwards v. Culberson,* 111 N. C., 342, 18 L. R. A., 204; *Powell v. Jones,* 36 N. C., 337; *Liles v. Rogers, supra; Bunting v. Ricks, supra.* Having received the fund with notice of the breach of trust, he is held to have participated therein, and becomes himself, by construction of a court of equity, a trustee of the fund for the benefit of the party entitled to the same, and the latter may pursue and recover it for the purpose of "indemnity and recompense," and a court of equity will not stop the pursuit until the means of ascertainment and identification of the fund fail, or the rights of *bona fide* purchasers for value without notice of the trust, or of some person having a superior equity, have intervened. *Edwards v. Culberson, supra.* While this right of subrogation exists and will always be enforced when a case is presented, to the facts and circumstances of which it is

adapted, we do not find in the plaintiff's complaint sufficient allegations to bring its cause of action within the application of the rule; and this requires us now to consider the defendant's last contention, that the plaintiff has not alleged facts sufficient to show that he is entitled to represent and stand in the place of any person entitled to the money which was paid by the bank to the defendants on the check.

The plaintiff alleges that Newsome received large sums of money as Clerk, "a large part of which he deposited in the bank, and that he misappropriated the trust funds so received by him to the amount of nearly eighteen hundred dollars which has been paid by the plaintiff as surety, and that the defendants received a check from Newsome for $197.86 on the bank, and that amount, out of the trust funds in the bank was paid to him on the check." It does not appear from this allegation with sufficient distinctness, even under the liberal provisions of The Code, that the money which the defendants received was any part of that which was converted or misappropriated by Newsome and which plaintiff was compelled to pay. It will be observed that the plaintiff does not allege that the trust fund misapplied by Newsome, the amount of which it was required to pay, was the same which had been deposited in the bank. The fund in the bank did not constitute all of the trust funds which had been received by Newsome as Clerk. It is alleged that he had received large sums of money, a part of which he placed in the bank. It appears, therefore, that the fund converted by Newsome and for which plaintiff was held liable and the amount of which it afterwards paid, may have been that part of the "large sum of money" alleged to have been held by Newsome, which was not deposited in the bank by him. Thus the matter is involved in the greatest doubt and uncertainty and we are left entirely to conjecture as to what are the real facts. If the fund, for the conversion of which by Newsome the

plaintiff was made liable, was not deposited in the bank, then it is very clear that the plaintiff is not entitled to recover in this action, as he seeks to recover upon the theory that the defendants have received a part of the trust fund which was deposited in the bank. The defect in the pleadings is to be found in the fifth section of the complaint, where it is alleged that Newsome misapplied the trust fund so received by him, not the fund so received by him and deposited in the bank; Newsome having received other funds than those which he placed in the bank, we must assume, in the absence of more specific allegation, that they were the funds misapplied by him, and for which misapplication or conversion the plaintiff was held liable. If this be true, the defendants cannot be liable to the plaintiff, as they received no part of the fund which was not deposited in the bank. The rule of pleading is that every intendment is to be made against the pleader. In *Wright v. McCormick*, 67 N. C., 27, *Rodman, J.*, says: "It is a rule of construction, of which no pleader has a right to complain, that all uncertainties and ambiguities in his pleadings shall be taken in the sense most unfavorable to him, for he has at all times the power and it is his duty to make them plain." But however this may be, and while we are sure that the failure to make the necessary allegation was a mere inadvertence, we cannot ascertain and pass upon the rights of the parties by mere conjecture.

The demurrer in this respect must be sustained, but as the plaintiff may have a good cause of action which is defectively stated in the complaint, the Court below may, upon proper application, and in the exercise of its discretion, allow the pleading to be amended. The Code, sec. 273; *Procter v. Ins. Co.*, 124 N. C., 265. The Court erred in overruling the demurrer. Let the case be remanded with the direction to proceed further therein in accordance with this opinion.

Error.