On or about 1 September, 1919, the defendant, Godwin, and wife, executed and delivered to plaintiff, 10 bonds of $1,000 each, $2,000 maturing 1 September, 1921; $2,000 1 September, 1922; $3,000 1 September, 1923; and $3,000 1 September, 1924. Interest from date payable semiannually. The said bonds were secured by a deed in trust of even date to plaintiff, Thomas B. Wilder, trustee, and filed for registration 22 September, 1919, Cumberland County registry, on 122 acres of land in Cumberland County, N.C. At the time of this loan, J. M. Jones, who was then living, had a lien on this land and it was agreed that he should get a part of the money loaned by Page Trust Company to Godwin and cancel his lien, and for the remainder of his debt against Godwin he should take a second mortgage on the land. Jones got the money agreed upon, canceled his lien and a new note for $4,000 from Godwin was executed, secured by mortgage on the 122 acres of land. This note and mortgage was dated 12 September, 1919, after the Page Trust Company deed in trust to Wilder, trustee, and due 30 December, 1920. Notwithstanding the agreement, the J. M. Jones mortgage was filed for record and recorded in Cumberland County prior to the Page Trust Company deed in trust. Sometime later, J. M. Jones executed *Page 514 
to the Page Trust Company, an agreement setting forth the facts and agreed in writing, as follows:
"Now, therefore, in consideration of the premises, and of one dollar in hand paid, the said party of the first part does hereby agree with the Page Trust Company that the said incumbrances of R. L. Godwin to Thomas B. Wilder, trustee, for the Page Trust Company, which is registered in Book 257, page 480, Cumberland County, after the mortgage to said Jones, which is in Book 251, page 59, shall have priority and precedence over the said Jones mortgage, and he does hereby formally waive and relinquish any and all rights to priority in security by reason of said prior registration, and agrees that the said Jones mortgage shall be an incumbrance subsequent to that to said Wilder, trustee, as aforesaid."
The above agreement was dated 15 May, 1923, and duly recorded 1 June, 1923. J. M. Jones before this written agreement was made transferred the $4,000 note and mortgage to the defendant, Citizens Bank Trust Company, of Benson (hereafter called Bank of Benson for brevity) 4 November, 1919 and the transfer was filed for registration 14 June, 1923. The $4,000 note of R. L. Godwin to J. M. Jones, secured by mortgage, transferred to defendant Bank of Benson, had the following on the back of the note: "We, as endorsers, for value received, hereby guarantee the payment of this note, and interest, with or without due notice of its nonpayment or protest at maturity, or at any time thereafter. R. L. Godwin, J. M. Jones."
The defendant Bank of Benson, advertised under the $4,000 note and mortgage the 122 acres of land in Cumberland County. It was sold to a bidder and J. R. Page increased the bid, in accordance with the statute, and a resale was ordered but not advertised.
This action is brought against R. L. Godwin and wife, J. C. Jones, administrator of J. M. Jones, deceased, and the Citizens Bank Trust Company of Benson:
(a) For the recovery of the amount due from R. L. Godwin on his notes to the Page Trust Company.
(b) To foreclose the deed of trust securing said indebtedness.
(c) For the equitable marshaling of assets in the event that the court held that the Jones mortgage now held by the Citizens Bank Trust Company on account of prior registration thereof was a first lien, then that the Citizens Bank Trust Company be required to proceed against the estate of J. M. Jones upon his endorsement and guaranty of payment of the $4,000 note to the end that the land should be relieved of the lien of said first mortgage as far as might be, and the proceeds of the sale of said land be applied to the satisfaction of the indebtedness *Page 515 
due the Page Trust Company. The defendant, Citizens Bank Trust Company, filed answer in which it claimed that it held a first lien upon said land on account of prior registration of the Jones mortgage and it purchased the $4,000 note for value before maturity and without any notice of any defect and asked that it be declared a first lien on the land. (The testimony of plaintiff's witness on the trial did not controvert this fact.) And by way of cross-action demanded judgment against the administrator of Jones upon the endorsement and guaranty of said note by said J. M. Jones, and for a foreclosure of the mortgage.
Defendant, J. C. Jones, administrator of J. M. Jones, after answering plaintiff's complaint, "prays that this action be dismissed, and that he be allowed to go hence without day and recover of the plaintiffs his costs in this action."
From the testimony of witness, J. R. Page, for plaintiff bank, the evidence was in accordance with the above stated facts. Upon the evidence and admission in the pleadings, the court below rendered judgment, in substance:
(1) For $10,000 and interest according to bonds against R. L. Godwin, less credit of $1,531.99, as of 1 June, 1922, in favor of Page Trust Company.
(2) That Bank of Benson recover of R. L. Godwin, as principal and J. C. Jones, administrator of J. M. Jones, deceased, as endorser and guarantor, the sum of $4,000 and interest from 1 December, 1921, and they be taxed with the cost. Godwin, as principal and Jones, administrator, as endorser and guarantor.
(3) Appointing commissioners to sell the land and the fund distributed from the proceeds. Defendant, Bank of Benson, has a first and prior lien on the fund arising from sale of land. As between Page Trust Company and J. C. Jones, administrator of J. M. Jones, the Page Trust Company, under its contract with J. M. Jones is equitably entitled to a first lien thereon and is equitably entitled to have the Bank of Benson proceed against the estate of J. M. Jones for the collection of its judgment to the exoneration of its lien under said mortgage as far as may be.
It is further considered and adjudged by the court that the moneys arising from the sale hereinbefore provided for after deduction of cost and expenses to be allowed by the court be applied as follows: (1) To the satisfaction as far as may be of the judgment herein pronounced in favor of the Bank of Benson, and the residue, if any, to be applied as far as may be to the satisfaction of the judgment herein pronounced in favor of the Page Trust Company, and that the Page Trust Company be and to the extent of any moneys so paid upon the *Page 516 
judgment in favor of the Bank of Benson, subrogated to the rights of the Bank of Benson in its judgment against J. C. Jones, administrator.
From the judgment rendered, J. C. Jones, administrator of J. M. Jones, assigns the following as error and appeals to the Supreme Court:
"That his Honor erred in allowing the paper-writing called a contract between J. M. Jones and the Page Trust Company, registered in Book 299, page 36, to be introduced and read in evidence.
That it was error in his Honor to hold that the plaintiffs, at the close of the evidence, were entitled to the judgment pronounced.
That it was error in giving judgment against the defendant J. C. Jones, administrator of J. M. Jones, as endorser and guarantor.
That it was error to tax the defendant J. C. Jones, administrator, with any of the costs of this action.
That it was error to hold that the Page Trust Company is equitably entitled to have the Bank of Benson proceed against the estate of the said J. M. Jones for the collection of its judgment to the exoneration of its lien under the mortgage.
That his Honor erred in holding that the Page Trust Company is subrogated to the rights of the Bank of Benson in its judgment against J. C. Jones, administrator.
That the motion for judgment as of nonsuit should have been allowed."
Godwin and Bank of Benson did not appeal.
In 38 C. J., p. 1366, "Marshaling Assets and Securities," the following is laid down: "The doctrine of marshaling assets is an old equitable doctrine, founded in natural justice and recognized in every enlightened system of jurisprudence governed entirely by principles of equity, well recognized in this country. It is not an absolute rule of law. In some jurisdictions the doctrine is recognized by force of statute, such statutes being merely declaratory of the general equity rule. Marshaling is not founded on contract, nor is it in any sense a vested right or lien, but rests upon equitable principles only and the discretion of the court."
Bynum, J., in Jackson v. Sloan, 76 N.C. p. 309, says: "The rule of equity is, that when one creditor can resort to two funds for the satisfaction of his debt, and another to one only of the funds, the former shall first resort to the fund upon which the latter has no claim, as that by this means of distribution both may be paid. And it is an analogous principle of equity that where a debtor whose lands are encumbered by a judgment lien sells one portion of it, the creditor who has a lien upon *Page 517 
that which is sold and upon that which is unsold, shall be compelled to take his satisfaction out of the undisposed of land, so that thus the creditor and the purchaser both may be saved," citing authorities. "But this, however, is never done when it trenches on the rights or operates to the prejudice of the party entitled to go upon both funds," citing authorities. 38 C. J., 1372; Harrington v. Furr, 172 N.C. 610; Brown v.Harding, 170 N.C. 265; Graves v. Currie, 132 N.C. 307; Pope v. Harris,94 N.C. 62.
"Subrogation is the substitution of one who, under the compulsion of necessity for the protection of his own interest, has discharged a debt for which another is primarily liable, in the place of the creditor, with all the security, benefits and advantages held by the latter with respect to the debt. One of the prerequisites to the exercise of the right is the complete discharge of the debt." 2 Beach Mod. Eq. Jur., secs. 797 and 798.Liles v. Rogers, 113 N.C. 197; Grainger v. Lindsay, 123 N.C. 216;Fidelity Company v. Jordan, 134 N.C. 241; Blacknall v. Hancock,182 N.C. 369; Grantham v. Nunn, 187 N.C. 394; Taylor v. Everett,188 N.C. 264.
In 37 Cyc., p. 370, it is laid down: "Formerly the right of subrogation was limited to transactions between principals and sureties, but it is no longer confined to cases of strict suretyship, but is broad enough to include every instance in which one party is required to pay a debt for which another is primarily answerable, and which, in equity and good conscience, ought to be discharged by the latter, and is the mode which equity adopts to compel the ultimate discharge of the debt by him who, in good conscience, ought to pay it, and to relieve him whom none but the creditor could ask to pay. Thus where two or more persons are equally liable to the creditor, if as between themselves there is a superior obligation resting on one to pay the debt, the other after paying it may use the creditor's security to obtain reimbursement," etc. We have given the generally accepted definition of the equity of marshaling and subrogation.
Defendant, J. C. Jones, administrator, earnestly contends that subrogation did not apply where there is a remedy at law, and quotes fromGaston, J., in Scott v. Dunn, 21 N.C. 428; "The doctrine of substitution which prevails in equity is not founded on contract, but as we have seen on the principles of natural justice." We think this principle of law correct but not applicable on this record. Defendant insists that plaintiff, Page Trust Company, had only a remedy at law. That the introduction of the contract between J. M. Jones and the Page Trust Company of 15 May, 1923, agreeing that the Page Trust Company lien "shall have priority and precedence over the said Jones mortgage," etc., excepted to by all the defendants, should not have been admitted in *Page 518 
evidence. But the record shows that although the Bank of Benson excepted, yet it has acquiesced in the judgment of the court below and makes no appeal. Under the facts as now appearing of record, we cannot hold that this was prejudicial to defendant Jones, administrator.
In marshaling assets, the rule does not apply as between debtor and creditor, it applies only as between different creditors. The defendant debtor, Godwin, makes no defense. The contest is between the creditors of Godwin, the Page Trust Company, J. C. Jones, administrator of J. M. Jones, and the Bank of Benson. All the parties are before the Court. Under our liberal practice, complete justice may and should be done in this action by the record now before us. Multiplicity of suits should not be allowed where justice can be done in one. Our Constitution in part says: Art. IV, sec. 1: "The distinction between actions at law and suits in equity and the forms of all such actions and suits shall be abolished, and there shall be in this State, but one form of action for the enforcement or protection of private rights or the redress of private wrongs, which shall be denominated a `civil action,'" etc. Distinction between and forms of action at law and suits in equity are abolished under our Constitution, but does not destroy equitable rights and remedies nor does it merge legal and equitable rights.Furst v. Merritt, ante, 397; Waters v. Garris, 188 N.C. p. 310.
The record now before us shows: That Godwin owes the debts. He is the debtor. He made (1) to secure bonds aggregating $10,000, a deed in trust on 122 acres of land in Cumberland County for the benefit of plaintiff, Page Trust Company; (2) to secure $4,000 bond, a mortgage to J. M. Jones on the same land. J. M. Jones is dead and J. C. Jones is his administrator. J. M. Jones in his lifetime, transferred his $4,000 note, secured by mortgage, to the Bank of Benson before maturity and guaranteed the payment. The bank was an innocent purchaser for value. The $4,000 lien was registered first, giving the Bank of Benson the first lien, and the $1,000 lien was registered subsequently. Sometime afterwards, J. M. Jones signed a paper-writing, which we construe to be a contract, that the $10,000 lien should have had priority and precedence over the $4,000 lien he had assigned to the Bank of Benson and the lien of the bank should be a subsequent encumbrance. The Bank of Benson, a defendant, by way of cross-action, demanded judgment against J. C. Jones, administrator of J. M. Jones, upon the endorsement and guaranty of the $4,000 note secured by mortgage. From the language on the back of the note: "We as endorsers, for value received, hereby guarantee the payment," etc., whether the judgment against Jones, administrator, as endorser and guarantor both was correct or not, is immaterial. Treated as a guarantor, defendant Jones, administrator, contends it was error; that Jones' liability ceased when it was *Page 519 
made to appear that the Bank of Benson had sufficient security with which to pay the indebtedness due it. We cannot so hold.
In Carpenter v. Wall, 20 N.C. p. 279, Daniel, J., defines a guaranty as follows: "A guaranty is a promise to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person who is himself in the first instance liable to such payment or performance. Fell on Guaranties, 1; Smith on Mercantile Law, 277." Beekerv. Saunders, 28 N.C. 380; Spencer v. Carter, 49 N.C. 287; Carter v.McGehee, 61 N.C. 431; Coleman v. Fuller, 105 N.C. 328, 329; Cowan v.Roberts, 134 N.C. 415; Grocery Company v. Early, 181 N.C. 459.
Shepherd, J., in Jenkins v. Wilkinson, 107 N.C. 709, says: "There is plain distinction between a guaranty of payment and a guaranty of collection. `The former is an absolute promise to pay the debt at maturity, if not paid by the principal debtor, and the guarantee may begin an action against the guarantor. The latter is a promise to pay the debt upon the condition that the guarantee shall diligently prosecute the principal debtor without success.' Jones v. Ashford, 79 N.C. 173 and Baylie's Sureties and Guarantors, 113." Hutchins v. Bank, 130 N.C. 285; Cowan v.Roberts, supra; Voorhees v. Porter, 134 N.C. 601.
28 C. J., p. 895, says: "An absolute guaranty is one by which the guarantor unconditionally promises payment or performance of the principal contract on default of the principal debtor or obligor, the most usual form of an absolute guaranty being that of payment, such as of the payment of commercial paper; but an absolute guaranty of performance is placed on the same ground, and subject to the same rules, as a guaranty of payment. A guaranty is deemed to be absolute unless its terms import some condition precedent to the liability of the guarantor. In order to bind the guarantor under an absolute guaranty it is not necessary that there should be notice of acceptance of the guaranty, or notice of the default of the principal, or that any steps should be taken to enforce the contract guaranteed against the principal, and the fact that these acts are not necessary in order to bind the guarantor distinguishes an absolute guaranty from a conditional guaranty, in which case these acts are a prerequisite to holding the conditional guarantor liable."
It is well settled that a guarantor of the payment of a note, as in the present case, may be sued at any time after default by the party for whom the guaranty was made. It was not incumbent, under J. M. Jones' guaranty, for the Bank of Benson to first resort to the security and sell under the mortgage. The judgment of the Bank of Benson against J. C. Jones, administrator of J. M. Jones, was correct. From the record we have the status of the parties fixed: The Bank of Benson (1) *Page 520 
a judgment against J. C. Jones, administrator of J. M. Jones, for $4,000; (2) a mortgage on 122 acres of land to secure the $4,000 debt. Page Trust Company, a lien debt for $10,000 on the 122 acres of land, subject to the Bank of Benson debt, and under the J. M. Jones contract a priority and precedence over the Bank of Benson debt.
In 38 C. J., p. 1371, it is said: "The operation of the principle of marshaling is not affected by the nature of the property which constitutes the double fund, but applies whenever a paramount creditor holds collateral security, or can resort collaterally to other real or personal estate for the satisfaction of the debt. However, an imperfect personal obligation, that is, one that cannot be enforced by suit, is not a security which can be marshaled. . . . As a general rule, before the doctrine of marshaling assets will be applied, there must be two funds or properties, at the time the equitable relief is sought, belonging to the common debtor of both creditors, on both of which funds one party has a claim or lien, and on one only of which the other party has a claim or lien."
Although strictly speaking the judgment against J. C. Jones, administrator of J. M. Jones, does not constitute a fund, yet plaintiff, Page Trust Company, under the priority contract with J. M. Jones, would be entitled to judgment against J. C. Jones, administrator of J. M. Jones, and the Bank of Benson has a judgment for the amount in this suit. All parties being before the Court analogous to marshaling, we think natural justice, equity and good conscience require that the judgment of the court below should not be disturbed. Exact justice has been done all the parties before the Court — that is the fundamental principle of equity. We do not think the taxing of cost in the court below was prejudicial.
The judgment below is
Affirmed.