HUTCHINS v. PLANTERS NATIONAL BANK OF RICHMOND.

(Filed May 13, 1902.)

GUARANTY—*Guarantor—Time of Accrual of Liability.*

Under the contract of guaranty in this case, the bank being an absolute guarantor, may be sued immediately upon default of the principal.

ACTION by J. W. Hutchins against the Planters National Bank of Richmond, heard by Judge *Thos. J. Shaw* and a jury, at September Term, 1901, of the Superior Court of DURHAM County. From a judgment for the plaintiff, the defendant appealed.

*Boone, Bryant & Biggs,* for the plaintiff.
*Manning & Foushee,* for the defendant.

COOK, J. This action was brought to recover the price of a lot of hides shipped to Chalkley & Company, at Richmond, Va., by the plaintiff. Pursuant to the correspondence between plaintiff and Chalkley & Co., defendant bank wrote to the First National Bank, Durham, N. C. (plaintiff's agent), "Draft drawn by J. W. Hutchins on B. D. Chalkley & Co. for green salted hides at 8 1-4 cents, hides to be thoroughly cured and swept clean of salt and water before being weighed, no green or half-cured hides to be shipped, amount not to exceed three hundred dollars will be paid." Thereupon plaintiff shipped the hides to Chalkley & Co., and drew upon them for the price, $288.75. Chalkley & Co. received the hides and kept them; but claimed that they did not come up to the contract as to quality; and refused to pay the draft, which was protested. Plaintiff sued the bank upon its written promise or guaranty, verdict and judgment for plaintiff, and defendant appealed.

The exceptions taken by defendant to the admission of evi-

dence can not be sustained. The questions to which exceptions were taken were asked Chalkley upon cross-examination, and affected his credibility as a witness, and his Honor instructed the jury that his answers should only be considered in determining what weight they would give to his evidence. These exceptions are without merit, and were not pressed by the learned counsel for defendant; so we deem it unnecessary to discuss them. The exception most earnestly relied upon, was to the refusal of his Honor to give the third prayer asked to be given to the jury, viz: "The bank having guaranteed the payment of the draft, upon the condition that the hides come up to the specifications, and the draft was to be paid in Richmond. It was the duty of the plaintiff to have sued the principal in the contract, to-wit, B. D. Chalkley & Co., and it not appearing that the said company is insolvent, the plaintiff can not recover of the defendant, and the jury will answer the issue 'No.' "

We think his Honor properly refused to give this instruction. Whether an action will lie against a guarantor immediately upon default of his principal, depends entirely upon the terms expressed and intended in the guaranty. A guarantor is not bound with his principal as an original promisor (or obligor) ; he is not a debtor (or obligor) from the beginning. But he makes his own separate contract, is not a joint contractor with his principal, and is not bound to do what his principal has contracted to do, except in so far as he has bound himself by his separate contract; the original contract is not his contract unless he makes it so in his guaranty. And this contract of guaranty, like all others, must be construed so as to give effect to the intent of the parties, which is to be ascertained from the whole tenor and subject of the agreement. This contract being in writing, expressed in plain and certain language, there can be no doubt about its meaning. It is obvious that it was the intent of the parties that defend-

ant bank would pay the plaintiff's draft immediately upon the shipment of the hides as required in its letter, if default thereof should be made by Chalkley & Co. The verdict establishes the fact that plaintiff complied with the conditions imposed upon him by shipping the hides agreeable to the contract, and drawing the draft. Thereupon his obligations ceased. Defendant's principal refused to pay, and then its liability arose and the cause of action accrued to plaintiff against it. The time then arrived when, according to the contract, the "draft * * * will be paid." Paid by whom? By Chalkley & Co. primarily, upon whom it was drawn, or bank upon their default. Had they intended otherwise, should they not have so said in their contract? If the bank had intended to guarantee the solvency of Chalkley, or to pay the debt if the plaintiff should fail to collect his money after exhausting the remedies provided for that purpose, then it could have been so stated in the contract; but plaintiff might not have agreed to such a condition, and refused to sell the hides to Chalkley & Co., as he would have had the right to do. The guaranty here made was absolute, and the right of action accrued against the guarantor immediately upon default of the principal; it is not dependent upon any extraneous event beyond the mere default by which the guaranty would have become binding. 14 Ency of Law, 2 Ed., 1141; *Jenkins v. Wilkinson,* 107 N. C., 707, 22 Am. St. Rep., 911; *Jones v. Ashford,* 79 N. C., 173.

Defendant's counsel contends in his argument that the contract sued upon was to be performed in Richmond, and is therefore a "Virginia contract," and must be construed according to the laws of Virginia; and insists that under the laws of Virginia an action will not lie against a guarantor until the remedy against the principal has been exhausted.

There was no evidence introduced upon the trial to sustain this contention. But he cites as an authority, to sustain his

position, *Piedmont, etc., Co. v. Morris,* 86 Va., 941, which we have carefully examined. It does not hold that an action should be *first* prosecuted against the principal in a case like the one at bar. The action in that case was brought upon a *conditional* guaranty to hold the guarantor primarily liable. The defendant was the agent of plaintiff to sell its fertilizers to *good* and *trustworthy* buyers on a credit, and to take lien notes upon forms furnished him; and to guarantee their payment—and "should any of the buyers fail to pay their notes at maturity, you (defendant) are, if requested, to proceed to collect them without delay for our account and remit proceeds." The plaintiff took the notes and kept them long after maturity, until they became worthless, and then undertook to collect upon the guaranty. The Court there held that plaintiff could not recover, and based its decision upon the instruction given the jury by the Court relating to the negligence of plaintiff in failing to exercise due diligence in collecting the notes. The instruction given and sustained is, "That if the jury believe from the evidence that the plaintiff took possession of the fertilizer notes on which this action is brought, before they became due, and never returned them to defendant, or directed the defendant to take possession of and collect them, and that while in the possession of said plaintiff they could have been collected by due diligence, and that such diligence was not used by the plaintiff, then the plaintiff can not recover as to any notes which were solvent and could have been collected by them by the use of due diligence." The guaranty was that the buyers were *good* and *trustworthy,* and was limited to the *collecting* of the notes given by them; the default thereof was occasioned by the plaintiff's negligence, and not the collectibility of the notes at maturity.

There is no error in the refusal to give the prayer asked; so the judgment of the Court below is

Affirmed.