IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-950

Filed: 1 August 2017

Mecklenburg County, No. 14 CVS 8495

FRIDAY INVESTMENTS, LLC, as Successor in Interest to Tisano Realty, Inc., Plaintiff,

v.

BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC. f/k/a Bally Total Fitness of the Southeast, Inc. f/k/a Holiday Health Clubs of the Southeast, Inc., as Successor in Interest to Bally Fitness Corporation; and BALLY TOTAL FITNESS HOLDING CORPORATION, Defendants.

Appeal by plaintiff from order entered 9 March 2016 by Judge Forrest D. Bridges in Mecklenburg County Superior Court. Heard in the Court of Appeals 22 March 2017.

>   *Horack, Talley, Pharr & Lowndes, P.A., by Keith B. Nichols, and Chadbourne & Parke, LLP, by Samuel S. Kohn, pro hac vice, for plaintiff-appellant.*
>
>   *Burt & Cordes, PLLC, by Stacy C. Cordes, and Knox, Knox, Brotherton & Godfrey, by Lisa Godfrey, for defendant-appellees.*

TYSON, Judge.

Friday Investments, LLC, ("Plaintiff") appeals from the trial court's order granting summary judgment in favor of Defendant, Bally Total Fitness Holding Corporation ("Bally Holding"). Genuine issues of material fact exist regarding whether the Guaranty was "required to be maintained" or was discharged in the

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

2008-2009 Bankruptcy. We reverse the trial court's order granting summary judgment in favor of Bally Holding and remand.

## I. Factual Background

This case arises from a lease of commercial premises between Plaintiff, as landlord and successor-in-interest to the original landlord, and Bally of the Mid-Atlantic, as tenant and successor-in-interest to the original tenant. Bally Holding had guaranteed the obligations of the original tenant and of the successors-in-interest thereto. When Bally of the Mid-Atlantic defaulted on its monthly rent obligations, Plaintiff sued to recover damages jointly and severally from Bally of the Mid-Atlantic and Bally Holding.

## A. Lease and Guaranty

On or about 14 February 2000, Tower Place Joint Venture, as landlord, and Bally Total Fitness Corporation, as tenant, entered into a written Lease Agreement (the "Lease") for commercial premises located within the Tower Place Festival Shopping Center in Charlotte. As an inducement to Tower Place Joint Venture to enter into the Lease with Bally Total Fitness Corporation, Bally Holding guaranteed the obligations of Bally Total Fitness Corporation. The Guaranty Agreement (the "Guaranty") was executed on or about 10 February 2000. In accordance with the recitals contained in the Lease, the Guaranty is attached to the Lease as "Exhibit C."

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

Bally Total Fitness Corporation later assigned its interest in the Lease to its subsidiary, Holiday Health Clubs of the Southeast, Inc.

## B. 2007 Bankruptcy Proceedings

On 31 July 2007, Bally Holding and its subsidiaries (collectively, the "Bally Companies") filed a petition for Chapter 11 bankruptcy in U.S. Bankruptcy Court (the "2007 Bankruptcy").

In anticipation of the initial bankruptcy, Tisano Realty, Inc., as successor-in-interest to the original landlord Tower Place Joint Venture, and Bally Total Fitness of the Southeast, Inc. ("Bally of the Southeast") f/k/a Holiday Health Clubs of the Southeast, Inc., as the tenant and successor-in-interest to Bally Total Fitness Corporation, executed an amendment to the Lease (the "First Amendment").

The First Amendment provides for reduced base rent schedules, which would apply in the event of tenant's filing a Chapter 11 bankruptcy petition. The First Amendment also stipulates: "Except as amended hereby, the Lease shall remain in full force and effect; and, as amended hereby, the Lease is affirmed, confirmed and ratified." On 17 September 2007, the bankruptcy court confirmed the Bally Companies' Plan of Reorganization.

## C. 2008-2009 Bankruptcy Proceedings

On 3 December 2008, the Bally Companies, including Bally of the Southeast, filed a second petition for Chapter 11 bankruptcy in U.S. Bankruptcy Court for the

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

Southern District of New York (the "2008-2009 Bankruptcy"). The cases were jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

On 25 June 2009, after the petition had been filed, Tisano Realty, Inc. and Bally of the Southeast executed another amendment to the Lease (the "Second Amendment"). The Second Amendment contains site plan modifications, signage revisions, and monthly base rent adjustments. Except as modified in the Second Amendment, the Lease and the terms thereof not expressly amended were to continue "in full force and effect."

During the 2008-2009 Bankruptcy proceedings, the Bally Companies jointly moved to assume certain unexpired real property leases pursuant to 11 U.S.C. § 365. By order entered 29 June 2009, the bankruptcy court granted the motion and authorized the Bally Companies to assume the unexpired leases identified in the Assumed Lease Schedule attached to the order (the "Assumption Order"). The Lease before us was included among those listed in the Assumed Lease Schedule.

The Bally Companies also submitted a Joint Plan of Reorganization of the Debtors Under Chapter 11 of the Bankruptcy Code. The Joint Plan of Reorganization was amended during the proceedings (as amended, the "Plan"). Seeking confirmation of the Plan, William G. Fanelli, the acting chief financial officer of the Bally Companies, submitted to the bankruptcy court a declaration in support of confirmation (the "Fanelli Declaration"). The Fanelli Declaration provides an outline

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

of the proposed reorganization and the feasibility thereof.  It also offers reasons to consolidate the Bally Companies for distribution purposes, including the following:

> 11. Article IV of the Plan provides that the Plan shall "serve as, and shall be deemed to be, a motion for entry of an order consolidating the [Debtors'] Estates" *solely* for distribution purposes.  The Plan explicitly limits the scope and purpose of such consolidation to implementation of the Plan, providing that the consolidation sought shall *not* affect: (i) the legal and corporate structure of the Reorganized Debtors; (ii) guarantees that are required to be maintained post-Effective Date[.] (alteration and emphasis original).

> 12. The Debtors propose consolidation of the Consolidated Debtors solely to facilitate distributions under the Plan.  The Debtors do not seek to improperly enhance or impair the recoveries of any creditors by way of the consolidation.  Indeed, the Debtors are not aware of any creditor actually affected by the consolidation contemplated under the Plan.

The bankruptcy court confirmed the Plan by order entered 19 August 2009 (the "Confirmation Order").  At issue in this case are two sections of the Confirmation Order and the Plan (together, the "Consolidation Provisions"): Paragraph 3 of the Confirmation Order, which reflects Article IV of the Plan, and Paragraph 15 of the Confirmation Order, which reflects Article X of the Plan.

Paragraph 3 of the Confirmation Order approves the consolidation contemplated in Article IV of the Plan.  Paragraph 3 provides in pertinent part:

> 3. Consolidation of the Debtors.

> (a) As no objections to such consolidation have been filed or served by any party, pursuant to Article IV of the Plan the

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

consolidation of the consolidated Debtors solely for the purpose of implementing the Plan, including for purposes of voting, confirmation and distributions to be made under the Plan is hereby approved. Solely for purposes of implementing the Plan, including without limitation the making of Distributions thereunder, and for no other purposes . . . and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors.

(b) Such consolidation (other than for the purpose of implementing the Plan) shall not affect . . . (ii) guarantees that are required to be maintained post-Effective Date (a) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed[.]

Article IV of the Plan provides in pertinent part:

Solely in connection with Distributions to be made to the holders of Allowed Claims, the Plan is predicated upon, and it is a condition precedent to confirmation of the Plan, that the Court provide in the Confirmation Order for the consolidation of the Debtors' Estates into a single Estate for purposes of this Plan and the Distributions hereunder. . . .

Pursuant to the Confirmation Order . . . (ii) the obligations of each Debtor will be deemed to be the obligation of the consolidated Debtors solely for purposes of this Plan and Distributions hereunder . . . , and (vi) all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors.

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

> Notwithstanding the foregoing, such consolidation shall not affect . . . (ii) guarantees that are required to be maintained post-Effective Date (a) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed[.]

Paragraph 15 of the Confirmation Order approves the provisions contained in Article X of the Plan, which addresses the assumption and rejection of executory contracts and unexpired leases. Paragraph 15 provides in pertinent part:

> 15. Executory Contracts and Unexpired Leases.
>
> (a) The executory contract and unexpired lease provisions of Article X of the Plan are specifically approved in all respects, are incorporated herein in their entirety and are so ordered. The Debtors are authorized to assume, assign and/or reject executory contracts or unexpired leases in accordance with Article X of the Plan. In the event of an inconsistency between the Plan and any executory contract or unexpired lease assumed under the Plan, the provisions of the Plan shall govern.
>
> (b) Pursuant to Article X of the Plan, the Debtors shall be deemed to assume each executory contract and unexpired lease that (i) was not previously assumed, assumed and assigned or rejected by an order of the Court, (ii) was not rejected pursuant to Exhibit A of the Plan, (iii) did not terminate or expire pursuant to its own terms[.]

Article X of the Plan provides in pertinent part:

> To the extent not (i) assumed in the Chapter 11 Cases prior to the Confirmation Date, (ii) rejected in the Chapter 11 Cases prior to the Confirmation Date, or (iii) specifically rejected pursuant to this Plan, each executory contract and unexpired lease that exists between Debtor and any Person is specifically assumed by the Debtor that is a party to such

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

> executory contract or unexpired lease as of, and subject to the occurrence of, the Effective Date pursuant to the Plan.

As previously noted, the Bally Companies specifically assumed the Lease before us pursuant to section 365 of the Bankruptcy Code.

### D. The Estoppel Certificate

On 29 September 2009, Bally of the Southeast merged into Bally Total Fitness of the Mid-Atlantic, Inc. ("Bally of the Mid-Atlantic"), as tenant under the Lease. In March 2011, Plaintiff purchased the property from Tisano Realty, Inc., becoming the successor-in-interest to the original and subsequent landlords with respect to the Lease.

Before the purchase, Ronald Siegel, an officer of Bally of the Mid-Atlantic, executed an estoppel certificate at Plaintiff's request. Siegel certified the Lease was "in full force and effect" and "guaranteed by Bally Total Fitness Holding Corporation, a Delaware corporation, Guaranty dated February 14, 2000." By its terms, Siegel also acknowledged that the estoppel certificate was made "as an inducement to the Buyer to accept assignment of the Lease from the Landlord and with full knowledge that the Buyer is relying upon the truth thereof."

Siegel returned the signed estoppel certificate to Plaintiff with marked revisions and deletions to several provisions in the document. The last page of the certificate contained the following annotation:

> This Estoppel Letter is being delivered to you on the

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

> express condition that the undersigned shall have no liability for any matters set forth herein and that *the only use or purpose of this Estoppel Letter will be to prevent the undersigned from making any statement or claim contrary to any factual matters set forth herein, except to the extent any such contrary matter is otherwise known to you prior to the time of delivery of this Estoppel Letter. . . .* (emphasis supplied).

While Siegel was also an officer of Bally Holding, no changes were made to the Guaranty provision in the certificate.

### E. Superior Court Proceedings

On 9 May 2014, Plaintiff filed a complaint and alleged Bally of the Mid-Atlantic had breached the Lease, and Bally Holding had breached the Guaranty, by failing to timely pay monthly rent installments and other past due charges. Plaintiff restated its breach of contract claim against Defendants in its first amended complaint and alleged alternative claims for common law fraud, fraud in the inducement, negligent misrepresentation, and unfair and deceptive trade practices.

Plaintiff moved for summary judgment against Defendants on its breach of contract claim. Bally of the Mid-Atlantic opposed Plaintiff's motion and argued its affirmative defenses raised genuine issues of material fact for trial. Bally Holding also opposed Plaintiff's motion and moved for summary judgment on the grounds that its liability on the Guaranty, if any, was discharged in bankruptcy.

By order entered 29 April 2015, the trial court granted partial summary judgment in favor of Plaintiff, concluding that Bally of the Mid-Atlantic had breached

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

the terms of the Lease. The court reserved for trial the issue of what damages, if any, Plaintiff was entitled to recover from Bally of the Mid-Atlantic. The court allowed the parties to submit additional briefs prior to ruling on whether Bally Holding was liable on the Guaranty.

By order entered 9 March 2016, the court granted summary judgment in favor of Bally Holding on Plaintiff's breach of contract claim. The court characterized the Lease and Guaranty as separate agreements, and concluded the Lease had been assumed in the 2008-2009 Bankruptcy, but the Guaranty had been discharged by the terms of the Plan, as follows:

> 2. Section 365 of the Bankruptcy Code allows a Debtor to assume or reject executory contracts and leases within certain time constraints and under certain conditions. As noted by the Plaintiff, Bankruptcy Courts have ruled that assumption of a lease or contract generally requires assumption of the contract in its entirety, with both the burdens and the benefits. . . .

> 3. On the other hand, a guaranty is not usually viewed as an executory contract that can be assumed or rejected by a Bankruptcy debtor. . . .

> . . . .

> 5. Ultimately, in determining dischargeability of a debt, the court must first and foremost look to the provisions of the Debtor's confirmed Plan. In this instance, the Plan specifically provided that all Guaranties of the Debtor of the obligation of any other Debtor shall be deemed eliminated except to the extent that they are required to be maintained. There was no indication that this Guaranty was "required to be maintained."

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

6. Pursuant to Section 1141 of the Bankruptcy Code, the confirmation of a Chapter 11 Plan discharges the Debtor from any debt arising before the date of confirmation except as otherwise provided in the Plan or in the order confirming the Plan.

7. Pursuant to Section 524 of the Bankruptcy Code, a discharge operates as an injunction against any action to collect any discharged debt from the Debtor.

8. In this case, the confirmation of the Debtor's Plan and closing of the case operated to create such discharge and injunction unless there was some contrary provision in the Plan.

. . . .

10. In light of the foregoing principles of law, this court concludes that, pursuant to provisions of the confirmed 2009 Chapter 11 Plan, the Guaranty of this lease by Bally Holding[] was discharged by the Confirmation of the 2009 Chapter 11 Plan and the closing of the Bankruptcy case.

11. Holding is not equitably estopped under North Carolina law from asserting that the indebtedness under the Guaranty was discharged by the confirmation of the 2009 Chapter 11 Plan.

The trial court certified the interlocutory order for immediate appeal pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure. Plaintiff timely appealed.

## II. Jurisdiction

This Court has jurisdiction over Plaintiff's appeal from the order granting summary judgment in favor of Bally Holding. When an action involves multiple parties or presents more than one claim for relief, the trial court "may enter a final

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment." N.C. Gen. Stat. § 1A-1, Rule 54(b) (2015); *see DKH Corp. v. Rankin-Patterson Oil Co.*, 348 N.C. 583, 585, 500 S.E.2d 666, 667-68 (1998).

Such judgment is subject to immediate appellate review even though it may not "determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950); *see* N.C. Gen. Stat. § 1A-1, Rule 54(b). If the trial court certifies an order for immediate appeal pursuant to Rule 54(b), "appellate review is mandatory." *Sharpe v. Worland*, 351 N.C. 159, 162, 522 S.E.2d 577, 579 (1999) (citation omitted). The court "may not, by certification, render its decree immediately appealable if it is not a final judgment." *Id.* (brackets, citations, and internal quotation marks omitted).

The trial court granted summary judgment for Bally Holding as to all claims raised against it in Plaintiff's original complaint and all claims in the first cause of action in Plaintiff's first amended complaint—i.e., Plaintiff's breach of contract claim. The court made no ruling on Plaintiff's alternative causes of action for common law fraud, fraud in the inducement, negligent misrepresentation, and unfair and deceptive trade practices. The order is final regarding one, but fewer than all claims raised by Plaintiff against Bally Holding. The trial court properly certified the order

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

for immediate appellate review under Rule 54(b). We address Plaintiff's appeal on the merits.

### III. Issues

Plaintiff argues the trial court erred in granting summary judgment for Bally Holding because (1) the Lease and Guaranty are a single agreement, which was assumed in the 2008-2009 Bankruptcy; (2) even if the Lease and Guaranty are separate agreements, the Guaranty was not and could not have been discharged by the terms of the Consolidation Provisions; and (3) equitable estoppel bars Bally Holding's assertion that the Guaranty was discharged in the 2008-2009 Bankruptcy.

In the alternative, Plaintiff argues genuine issues of material fact exist, which made entry of summary judgment for Bally Holding inappropriate.

### IV. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2015).

"[A]n issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Merritt, Flebotte, Wilson, Webb & Caruso, PLLC v. Hemmings*, 196 N.C. App. 600, 604, 676 S.E.2d 79, 83 (2009)

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

(citations and internal quotation marks omitted). A trial court's order granting summary judgment is reviewed *de novo. In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

## V. Lease and Guaranty are Separate Contracts

North Carolina contract law controls the interpretation of the Lease and Guaranty, as required by the choice of law provision contained therein.

This Court has held that a guaranty is:

> "a contract, obligation or liability . . . whereby the promisor, or guarantor, undertakes to answer for the payment of some debt, or the performance of some duty, in case of the failure of another person who is himself . . . liable to such payment or performance." *Trust Co. v. Clifton*, 203 N.C. 483, 485, 166 S.E. 334, 335 (1932). The guarantor "makes his own separate contract, . . . and is not bound to do what his principal has contracted to do, except in so far as he has bound himself by his separate contract[.]" *Hutchins v. Planters National Bank of Richmond*, 130 N.C. 285, 286, 41 S.E. 487, 487 (1902).

*Tripps Rests. of N.C., Inc. v. Showtime Enters., Inc.*, 164 N.C. App. 389, 391, 595 S.E.2d 765, 767 (2004).

The strict independence of the two separate contracts is "not affected by the fact that both contracts are written on the same paper or instrument or are contemporaneously executed." 38 Am. Jur. 2d *Guaranty* § 4 (1999); *see Tripps Rests. of N.C.*, 164 NC. App. at 391, 595 S.E.2d at 767 ("[B]oth contracts (between creditor

FRIDAY INVS., LLC v. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

and primary obligor and between creditor and guaranty) may be contained in the same instrument." (citing 38 Am. Jur. 2d *Guaranty* § 4).

Although the Guaranty in this case was attached to the Lease as an exhibit, it remains a wholly independent and separate contract under North Carolina law. *See id.* Plaintiff's arguments to the contrary are overruled.

## VI. Summary Judgment Analysis

The trial court found the Consolidation Provisions provided "all Guarantees of the Debtor of the obligation of any other Debtor shall be deemed eliminated except to the extent that they are required to be maintained" and that "[t]here was no indication that this Guaranty was 'required to be maintained.'" Pursuant to the Consolidation Provisions, the unexpired Lease at issue in this case was expressly assumed by the debtor-tenant and approved by the bankruptcy court during the Chapter 11 re-organization. However, the language of the Consolidation Provisions and the Second Amendment raises genuine issues of material fact regarding whether the Guaranty was "required to be maintained" or was discharged during the 2008-2009 Bankruptcy.

## A. The Consolidation Provisions

Under well-established bankruptcy law, a Chapter 11 re-organization plan is basically a court-approved contract between the debtor and its creditors. *In re WorldCom, Inc.*, 352 B.R. 369, 377 (Bankr. S.D.N.Y. 2006). As a binding contract, a

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

confirmed plan "must be interpreted in accordance with general contract law." *In re Bennett Funding Grp.*, 220 B.R. 743, 758 (Bankr. N.D.N.Y. 1997); *In re WorldCom*, 352 B.R. at 377 ("The Court must interpret the provisions of [a Chapter 11 Plan] . . . a task akin to interpreting a binding contract.").

The Consolidation Provisions are construed under New York contract law, which is similar to North Carolina law on this issue.

> Under New York law, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms. When the terms of a written contract are ambiguous, however, a court may turn to evidence outside the four corners of the document to ascertain the intent of the parties. *When the language of a contract is ambiguous and there exists relevant extrinsic evidence of the parties' actual intent, summary judgment is precluded.* Whether or not a writing is ambiguous is a question of law to be resolved by the courts. If a contract is unambiguous on its face, its proper construction is a question of law.

*In re Indesco Int'l, Inc.*, 451 B.R. 274, 282 (Bankr. S.D.N.Y. 2011) (emphasis supplied) (brackets, internal quotation marks, and footnotes omitted).

"Substantive consolidation treats separate legal entities as if they were merged into a single survivor left with all the cumulative assets and liabilities (save for inter-entity liabilities, which are erased). The result is that claims of creditors against separate debtors morph to claims against the consolidated survivor." *In re Genesis Health Ventures, Inc.*, 402 F.3d 416, 423 (3d Cir. 2005). Whereas, "[d]eemed consolidation has been characterized as 'a pretend consolidation[.]'" 3 Howard J.

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

Steinberg, *Bankruptcy Litigation* § 15:52 (2d ed. 2007 & Supp. 2016) (citing *In re Owens Corning*, 419 F.3d 195, 216 (3d Cir. 2005)).

In a plan of reorganization, multiple debtors or entities may be "deemed consolidated" solely "for purposes of valuing and satisfying creditor claims, voting for or against the [p]lan, and making distributions for allowed claims[.]" *In re Owens Corning*, 419 F.3d at 202. A deemed consolidation streamlines the distribution process, but does not affect the legal structure of the debtors or the rights of claimholders. Steinberg, *supra*, § 15:52; *see In re Genesis Health Ventures*, 402 F.3d at 423-24. Notably, a deemed consolidation may only be used as a shield, and not as a sword. *In re Owens Corning*, 419 F.3d at 216.

Here, Paragraph 3 of the Confirmation Order provides:

> (a) As no objections to such consolidation have been filed or served by any party, pursuant to Article IV of the Plan the consolidation of the consolidated Debtors *solely for the purpose of implementing the Plan*, including for purposes of voting, confirmation and distributions to be made under the Plan is hereby approved. *Solely for purposes of implementing the Plan*, including without limitation the making of Distributions thereunder, and for no other purposes . . . and (vi) *all guarantees of the Debtors of the obligations of any other Debtors shall be deemed eliminated so that any Claim against any Debtor and any guarantee thereof executed by any other Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors*. (emphasis supplied).

However, the Confirmation Order further provides:

> (b) Such consolidation (other than for the purpose of

- 17 -

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

implementing the Plan) shall not affect . . . (ii) guarantees that are required to be maintained post-Effective Date (a) in connection with executory contracts or unexpired leases that were entered into during the Chapter 11 Cases or that have been, or will hereunder be, assumed[.]

William Fanelli, the acting chief financial officer of the debtors and debtors in possession, submitted a declaration in support of the proposed plan. The declaration stated:

11. . . . The Plan explicitly limits the scope and purpose of such consolidation to implementation of the Plan, providing that the consolidation sought shall not affect: *(i) the legal and corporate structure of the Reorganized Debtors; (ii) guarantees that are required to be maintained post-Effective Date*[.] (emphasis supplied).

12. The Debtors propose consolidation of the Consolidated Debtors solely to facilitate distributions under the Plan. The Debtors do not seek to improperly enhance or impair the recoveries of any creditors by way of the consolidation. Indeed, the Debtors are not aware of any creditor actually affected by the consolidation contemplated under the Plan.

Since the debtors were consolidated "solely for the purposes of implementing the Plan," it appears the Consolidation Provisions contemplate a "deemed consolidation." Furthermore, the language of the Consolidation Provisions and the Fanelli Declaration demonstrate not all guarantees were discharged during the 2008-2009 Bankruptcy.

Under the language of the Consolidation Provisions, a genuine issue of material fact exists regarding whether the Guaranty was discharged or whether it

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

was "required to be maintained." *See In re Indesco Int'l,* 451 B.R. at 282 ("[W]hen the language of a contract is ambiguous and there exists relevant extrinsic evidence of the parties' actual intent, summary judgment is precluded.").

### B. Second Amendment

Contrary to the trial court's holding, the Second Amendment to the Lease raises genuine issues of material fact regarding whether the Guaranty was "required to be maintained."

Defendants argue the Second Amendment demonstrates the Guaranty was not required to be maintained subsequent to the effective date of the Confirmation Plan. Defendants assert the Second Amendment was negotiated between Tisano and Bally of the Southeast, and did not include joinder of Bally Holding as a guarantor. Plaintiff argues under the language of the Guaranty, the Second Amendment did not relieve the obligations of Bally Holding as guarantor to the Lease.

The original Guaranty provided:

> FOR VALUE RECEIVED, and in consideration for, and as an inducement to Tower Place Joint Venture, as Landlord, to enter into a Lease dated as of February 14, 2000 (the "Lease"), for certain premises located within the property commonly known as Tower Place Festival Shopping Center . . . , with Bally Total Fitness Corporation, a Delaware corporation, as Tenant, *the undersigned guarantees the full performance and observance of all the covenants, conditions and agreements contained in the Lease to be performed and observed by Tenant, Tenant's successors and assigns . . . .*
>
> *The undersigned further covenants and agrees that this*

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

> *Guaranty shall remain and continue in full force and effect as to any renewal, modification, or extension of said Lease, provided that notice thereof is duly delivered to the Guarantor as provided in the Lease.* The undersigned further agrees that its liability under this Guaranty shall be primary, and that if any right or action shall accrue to Landlord under the Lease, Landlord may, at Landlord's option, proceed against the undersigned without having commenced an action against or having obtained any judgment against Tenant. . . .
>
> . . . .
>
> No subletting, assignment, or other transfer of the Lease, or any interest therein, other than as specifically provided herein or in the Lease, shall operate to extend or diminish the liability of the Guarantor under this Guaranty. Whatever reference is made to the liability of Tenant within the Lease, such reference shall be deemed likewise to refer to the Guarantor. *It is further agreed that all of the terms and provisions hereof shall inure to the benefit of the successors and assigns of Landlord, and shall be binding upon the successors and assigns of the undersigned.* (emphasis supplied).

Based upon this language, renewals, modifications, or extensions to the Lease would not affect or release the responsibilities of the guarantor, unless the guarantor did not receive proper notice. The Second Amendment further provides that any terms of the Lease not expressly modified or amended remained unaltered and in full force and effect. At minimum, this language demonstrates a genuine issue of material fact exists regarding whether the Guaranty survived the Second Amendment and, ultimately, whether the Guaranty was "required to be maintained" or was discharged during the 2008-2009 Bankruptcy.

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*Opinion of the Court*

## VII. Conclusion

The Lease and Guaranty constitute two separate and distinct contracts under North Carolina law. *See Tripps Rests. of N.C.*, 164 NC. App. at 391, 595 S.E.2d at 767. Based upon our standard of review, summary judgment was inappropriate as genuine issues of material fact exist regarding whether the Guaranty was "required to be maintained" or was discharged during the 2008-2009 Bankruptcy.

The trial court erred by granting summary judgment for Bally Holding. We do not address and express no opinion on damages, including attorney fees, or on Plaintiff's other claims against Defendants.

The trial court's order granting summary judgment in favor of Bally Holding is reversed and this cause is remanded for further proceedings. *It is so ordered*.

REVERSED AND REMANDED.

Judge DIETZ concurs.

Judge ELMORE dissents with separate opinion.

No. COA16-950 – *Friday Invs., LLC v. Bally Total Fitness of the Mid-Atlantic, Inc.*

ELMORE, Judge, dissenting.

It is a fundamental principle of bankruptcy law that a debtor-in-possession who assumes an executory contract "assumes the contract *cum onere*," *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531–32, 104 S. Ct. 1188, 1199, 79 L. Ed. 2d 482, 499 (1984) (citation omitted), in its entirety "without any diminution in its obligations or impairment of the rights of the lessor in the present or the future," *In re Texaco Inc.*, 254 B.R. 536, 550 (Bankr. S.D.N.Y. 2000) (footnote omitted). Because the language of the Lease and Guaranty reflects a clear intention of the parties to treat the instruments as component parts of a single executory contract, which had to be assumed in its entirety during the 2008–2009 Bankruptcy, I respectfully dissent.

As the majority properly notes, North Carolina contract law controls the interpretation of the Lease.[1] Our rules of construction require "the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." *State v. Philip Morris USA Inc. (Philip Morris I)*, 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005) (citation omitted). The "intent" of the parties "is derived not from a particular contractual term but from the contract as a whole." *Id.* (citation omitted). The contract must be considered in its entirety without placing undue emphasis on "what the separate parts mean." *Jones v. Casstevens*, 222 N.C. 411, 413–14, 23 S.E.2d 303, 305 (1942); *see also Peirson v. Am. Hardware Mut. Ins. Co.*, 249

---

[1] The choice-of-law provision in the Lease provides: "This Lease shall be governed by, and construed in accordance with, the laws of the State in which the Premises are located."

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*ELMORE, J., dissenting*

N.C. 580, 583, 107 S.E.2d 137, 139 (1959) ("The object of interpretation should not be to find discord in differing clauses, but to harmonize all clauses if possible." (citations omitted)).

If the language of the contract is "plain and unambiguous, there is no room for construction. The contract is to be interpreted as written," *Jones*, 222 N.C. at 413, 23 S.E.2d at 305 (citations omitted), and "enforce[d] . . . as the parties have made it," *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) (citations omitted). Ambiguity exists "only when, 'in the opinion of the court, the language of the [contract] is fairly and reasonably susceptible to either of the constructions for which the parties contend.' " *State v. Philip Morris USA Inc. (Philip Morris II)*, 363 N.C. 623, 641, 685 S.E.2d 85, 96 (2009) (quoting *Wachovia Bank & Trust Co.*, 276 N.C. at 354, 172 S.E.2d at 522); *see also Walton v. City of Raleigh*, 342 N.C. 879, 881–82, 467 S.E.2d 410, 412 (1996) ("Parties can differ as to the interpretation of language without its being ambiguous . . . .").

To determine the agreement undertaken, "[a]ll contemporaneously executed written instruments between the parties, relating to the subject matter of the contract, are to be construed together." *Yates v. Brown*, 275 N.C. 634, 640, 170 S.E.2d 477, 482 (1969) (citations omitted); *see also Wiles v. Mullinax*, 275 N.C. 473, 480, 168 S.E.2d 366, 371 (1969) ("Two sheets, attached together as parts of a single communication, must of course, be construed as one document." (citations omitted));

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*ELMORE, J., dissenting*

*Carolina Place Joint Venture v. Flamers Charburgers, Inc.*, 145 N.C. App. 696, 699, 551 S.E.2d 569, 571 (2001) (concluding that franchise agreement and guarantee, which was signed as inducement, "were merged into one document, the [f]ranchise [a]greement"). Where a document incorporates another by reference, the latter is construed as part of the former "as if it were set out at length therein." *Booker v. Everhart*, 294 N.C. 146, 152, 240 S.E.2d 360, 363 (1978) (citation omitted). In other words, if "several instruments" are "executed contemporaneously" and "pertain to the same transaction," they "are to be considered as component parts of the understanding between the parties" such that "the whole contract stands or falls together." *Pure Oil Co. of the Carolinas v. Baars*, 224 N.C. 612, 615, 31 S.E.2d 854, 856 (1944) (citations omitted).

If the contract is clear and unambiguous, there is no genuine issue of material fact; rather, construction is a matter of law for the court. *Carolina Place Joint Venture*, 145 N.C. App. at 699, 551 S.E.2d at 571 (citation omitted); *see also Asheville Mall, Inc. v. F.W. Woolworth Co.*, 76 N.C. App. 130, 132, 331 S.E.2d 772, 773–74 (1985) ("When the language of the contract is clear and unambiguous, . . . the court cannot look beyond the terms of the contract to determine the intentions of the parties." (citations omitted)). If the contract is ambiguous, however, its interpretation "is a matter for the jury." *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 422, 547 S.E.2d 850, 852 (2001); *see also Whirlpool Corp. v.*

3

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*ELMORE, J., dissenting*

*Dailey Constr., Inc.*, 110 N.C. App. 468, 471, 429 S.E.2d 748, 751 (1993) ("[I]f the terms of the contract are ambiguous then resort to extrinsic evidence is necessary and the question is one for the jury." (citation omitted)).

Applying the foregoing principles, I believe the parties expressed a clear intent to treat the Lease and Guaranty as a single contract. Bally Holding executed the Guaranty contemporaneously with, if not prior to, the Lease as an "inducement" to the lessor. The Guaranty, attached as Exhibit C to the Lease, is explicitly referenced in the recitals: "WHEREAS, the performance of the obligations of Tenant under this Lease is to be guaranteed by BALLY TOTAL FITNESS HOLDING CORPORATION . . . pursuant to a Guaranty in the form of Exhibit C attached hereto." The Guaranty, likewise, references the Lease and the liability of Bally Holding thereunder: "Whatever reference is made to the liability of Tenant with the Lease, such reference shall be deemed likewise to refer to the Guarantor." In addition to the cross-references contained in the documents, the Lease expressly incorporates the Guaranty. Article 1.1 provides: "[T]he recitals, as well as the exhibits attached to this Lease, are hereby incorporated into this Lease in their entirety."

Because the record plainly reveals that the Lease and Guaranty constitute a single contract, ratified by the First and Second Amendments to Lease, the Guaranty had to be assumed by the terms of the Assumption Order in the 2008–2009 Bankruptcy. Bally Holding could not sever the Lease, electing to avoid its obligations

4

FRIDAY INVS., LLC V. BALLY TOTAL FITNESS OF THE MID-ATLANTIC, INC.

*ELMORE, J., dissenting*

on the Guaranty while leaving the more favorable provisions intact. Such a construction runs counter to the expressed intent of the parties and impairs the rights of plaintiff to secure performance of the Lease obligations from Bally Holding. Our treatment of guaranty agreements should not be so rigid to preclude parties from drafting toward more suitable arrangements.

Contrary to the trial court's conclusion, the language assented to by the parties provides a clear indication that the Guaranty was "required to be maintained" with the assumption of the Lease. Bally Holding remains liable on the Guaranty, which was a component part of the Lease assumed in the 2008–2009 Bankruptcy. I would reverse the trial court's order and remand for entry of summary judgment in favor of plaintiff on its breach of contract claim against Bally Holding raised in the original complaint and in the first cause of action of the first amended complaint.