ASHEVILLE MALL, INC. v. F. W. WOOLWORTH COMPANY

No. 8428SC1114

(Filed 16 July 1985)

**Evidence § 32.7; Landlord and Tenant § 6.1— ambiguous lease—admissibility of parol evidence**

A lease agreement was ambiguous as to whether the north wall was included in the demised premises and whether the lessee had the right to make alterations to the wall, and the trial court erred in refusing to admit into evidence the original lease agreement containing certain language crossed out and plaintiff's parol testimony concerning negotiations of the parties.

APPEAL by plaintiff from *Allen, Judge.* Judgment entered 24 May 1980 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 14 May 1985.

Plaintiff brought this action seeking to enjoin defendant-lessee from tearing down a partition wall (the "north wall"), and installing a lunch counter. Defendant answered, alleging that the lease permitted such construction. At the conclusion of the evidence, the trial judge submitted the following issue to the jury: "Did Asheville Mall, Inc., lease to F. W. Woolworth Company the front or north wall of the Woolworth store and Harvest House

Restaurant located in the Asheville Mall?" The jury responded "Yes," and the trial judge denied plaintiff's request for a permanent injunction.

*Riddle, Kelly and Cagle by E. Glenn Kelly for plaintiff-appellant.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A. by Larry McDevitt for defendant-appellee.*

PARKER, Judge.

The issue before us is whether the trial judge erred in refusing to admit parol evidence offered by plaintiff to explain the terms of the lease. The question to be determined in the trial court was whether the north wall was included in defendant's lease. The relevant sections of the contract are as follows:

Tenant's Right to Make Alterations

ART. 8. The Landlord agrees that the Tenant may at its own expense, from time to time during the term hereof, make such alterations, additions and changes, structural or otherwise, in and to the demised premises as it finds necessary or convenient for its purposes [and may build on any vacant land included within the demised premises, and may demolish any buildings on the demised premises occupied solely by the Tenant provided it proceeds with all reasonable diligence to erect a new building or buildings thereon of at least equal value to that demolished. The Landlord agrees that the Tenant may from time to time during the term hereof remove walls and connect the demised premises with other premises owned or controlled by the Tenant.] The Tenant agrees that [any building erected by it and] all alterations, additions and changes made by it will be erected or made in a first-class workmanlike manner, anything in this lease to the contrary notwithstanding the Landlord and Tenant agree that the Tenant shall have neither the right nor the obligation at the end of the term of this lease or any extension thereof to remove the same or to change such structure or restore the premises to the condition in which they were originally. The Landlord agrees that when necessary the Tenant may at all reasonable times enter any part of the building

of which the demised premises are a part with mechanics, tools and materials to make such alterations, additions and changes. The Landlord agrees to use its best efforts to procure for this Tenant the right of entry for such purposes. (Bracketed portions were crossed out on the original contract.)

## DEMISED PREMISES

The demised premises consist of a one-story building (with land thereunder) having irregular dimensions of 120 feet of mall frontage width by a depth of 300 feet and containing approximately 47,152 square feet to be erected within the Entire Premises described below at the approximate location shown on the drawing attached hereto and made a part hereof.

The intention of the parties to a contract must be determined from the language of the contract, the purpose and subject matter of the contract, and the situation of the parties at the time the contract was executed. *Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 219 S.E. 2d 190 (1975). When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court, *Brokers, Inc. v. High Point City Board of Education*, 33 N.C. App. 24, 234 S.E. 2d 56, *review denied*, 293 N.C. 159, 236 S.E. 2d 702 (1977), and the court cannot look beyond the terms of the contract to determine the intentions of the parties. *Renfro v. Meacham*, 50 N.C. App. 491, 274 S.E. 2d 377 (1981).

In the instant case the trial judge ruled that he did not consider the lease ambiguous and that he would not permit plaintiff to offer parol evidence of the negotiations of the parties. The record is unclear as to whether this ruling was at the bench or in the hearing of the jury. The trial judge also did not permit plaintiff to introduce the original executed lease, but permitted only a copy with the stricken language blanked or blacked out so that the stricken language was not legible. (In the original the stricken language was still legible.) Thereafter, a lawyer was permitted to testify as an expert witness for defendant as to the interpretation of certain language in the contract, particularly the meaning of the word "building" as used in the description of the demised premises. The trial judge did not, however, construe the contract,

Asheville Mall v. F. W. Woolworth Co.

but instead allowed the jury to determine its construction. By sending the contract to the jury the trial judge treated the contract as though it was ambiguous. Only when an agreement is ambiguous, is it for the jury to determine the parties' intent. *Silver v. North Carolina Board of Transportation*, 47 N.C. App. 261, 267 S.E. 2d 49 (1980).

An issue similar to that in this case was addressed by our Supreme Court in *Root v. Allstate Insurance Co.*, 272 N.C. 580, 158 S.E. 2d 829 (1968). In *Root*, the plaintiffs, the lessors, entered into a lease agreement with defendant lessee for a five year period. At the time the agreement was entered into the building to be leased had not yet been constructed. The lease was renewed for an additional five year period. The following year, after the lessee had been in possession for six years, an agent of the lessors noticed that the lessee was using the basement of the building. The lessors demanded additional payment for use of the basement area, and the lessee refused to pay. The issue before the Supreme Court was whether the basement was included in the written lease agreement. The Court observed that the general rule is that when a written contract is introduced into evidence, its terms may not be contradicted by parol evidence, and it is presumed that all prior negotiations are merged into the written contract. When there is a latent ambiguity in the contract, *i.e.*, when the words of the instrument are intelligible but leave uncertain the identification of the property, parol evidence is admissible to aid in determining the intention of the parties. The Court held that the uncertainty as to whether the basement was included in the lease constituted a latent ambiguity; parol evidence was, therefore, admissible to show the intention of the parties, and the case should have been submitted to the jury.

In the instant case the trial judge was correct in submitting the issue to the jury because the language of the contract is not clear and unambiguous as to whether the north wall is included in the demised premises and whether the lessee has the right to make alterations to the wall. However, under *Root*, parol evidence should have been admitted to aid the jury in determining the intention of the parties. The trial judge erred in refusing to admit into evidence the original lease agreement and plaintiff's parol testimony as to the parties' negotiations.

New trial.

Judges ARNOLD and MARTIN concur.