Williams Overman Pierce, LLP v. Duncan, 2011 NCBC 10.

STATE OF NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
                                                              SUPERIOR COURT DIVISION
COUNTY OF WAKE                                           10 CVS 8100


WILLIAMS OVERMAN PIERCE, LLP,    )
WOP RALEIGH HOLDINGS, LLC AND    )
WOP GREENSBORO HOLDINGS, LLC,    )
                                 )
          Plaintiffs,            )
                                 )
     v.                          )          **ORDER**
                                 )
DANIEL PATRICK DUNCAN AND         )
DUNCAN ASHE, PA,                 )
                                 )
          Defendants.            )


{1}      THIS MATTER is before the Court on Defendants' Verified Motion for Enforcement and Interpretation of Settlement Agreement and Plaintiff's Motion to Dismiss Defendants' Verified Motion for Enforcement and Interpretation of Settlement Agreement for Lack of Subject Matter Jurisdiction.  The parties entered two agreements that include the term "Client Limitation Period," which "shall mean the three (3) year period beginning after the partner's involuntary retirement but such period shall not extend to work for more than two (2) full accounting periods ending after the date of involuntary retirement."  The term was first stated in the William Overman Pierce, LLP ("WOP") Partnership Agreement ("Partnership Agreement").  It was later incorporated into the parties' Settlement Agreement and Mutual Release of All Claims ("Settlement Agreement").  The parties disagree as to how the term is to be applied to WOP clients that may wish to have their accounting work performed by Defendants after Daniel Patrick Duncan ("Duncan") was involuntarily terminated as a WOP partner.  The Court finds that it has jurisdiction to declare the rights between the parties, DENIES Plaintiffs' motion to dismiss, and declares the meaning of the term "Client Limitation Period" that shall be used in interpreting and enforcing the Settlement Agreement.

*Howard, Stallings, From & Hutson, P.A. by John N. Hutson , Jr. and Philip W. Payne for Plaintiffs.*

*Carruthers & Roth, P.A. by Jack B. Bayliss, Jr. and Michal E. Yarborough for Defendants.*

Gale, Judge.

## Procedural History

{2}     Plaintiffs initiated the action on May 12, 2010, following WOP's involuntary termination of Duncan  as a partner, effective as of September 30, 2009. The matter was designated a Complex Business Case on June 22, 2010, assigned to Judge Ben F. Tennille on June 23, 2010, and reassigned to the undersigned following Judge Tennille's retirement.

{3}     The parties entered the Settlement Agreement prior to Defendants' responsive pleading.   As required by the Settlement Agreement, Plaintiffs filed a Voluntary Dismissal with Prejudice on December 3, 2010.   The Settlement Agreement includes a provision retaining this Court's jurisdiction for limited purposes.  Defendants filed their motion to interpret and enforce the Settlement Agreement on December 17, 2010.   Plaintiffs challenged the Court's jurisdiction by their motion on January 2, 2011. Plaintiffs also responded to the Defendants' motion on its merits.   The motions were fully briefed.  The Court heard oral argument by telephone conference on March 18, 2011.

{4}     Although Plaintiffs contend that the Court does not have jurisdiction to determine Defendants' motion, Plaintiffs agree that if there is jurisdiction, the material facts upon which Defendants' motion should be resolved are uncontested, and the term "Client Limitation Period" can be interpreted as a matter of law without the need to hear evidence on any contested fact.

## Use of the Term "Client Limitation Period"

{5}     The Partnership Agreement has a non-compete provision, restricting competition for a three year period.  Duncan was involuntarily terminated without cause.

Section 25.05 of the Partnership Agreement provides a partner who is terminated involuntarily an election to nullify the non-compete provisions in exchange for that partner's agreement to pay WOP certain sums determined by a stated formula for former WOP clients who elect to have Duncan do their accounting work. Section 25.05(g) also states a "Client Limitation Period" for the restrictions which follow a departing partner's election under that section.

{6} Duncan exercised the election afforded him. Following his termination as of September 30, 2009, Duncan began practice with Defendant Duncan Ashe, PA. Certain WOP clients elected to have Defendants do their accounting work. Plaintiffs instituted the litigation to collect monies they contend Defendants owed them by reason of such work.

{7} Prior to responsive pleadings, the parties entered the Settlement Agreement, which provides for Defendants' monetary payments for former WOP clients specifically identified by Exhibit A to the Settlement Agreement. The Settlement Agreement further provides that the obligations of Section 25.05 continue for other WOP clients not specifically identified in Exhibit A should Defendants provide accounting work for such clients during the "Client Limitation Period." Paragraph 3 of the Settlement Agreement provides:

> 3. Obligation Satisfied:
>
> In exchange for the payments identified in Section 1 above, the defendants have satisfied in full their obligations under the WOP Partnership Agreement as it relates to those clients who are now clients of the defendants, as more particularly identified on the list attached hereto as Exhibit A. However, nothing contained in this Agreement does not and is not intended to or otherwise operates to release the defendants from their obligations under the WOP Partnership Agreement, including without limitation Section 25.05, with respect to their obligations for any clients that are not identified on Exhibit A that may become clients of the Defendants during the Client Limitation Period, as defined in Section 25.05(g) of the WOP Partnership Agreement ("That the Client Limitation Period shall mean the three (3) year period beginning after the partner's involuntary retirement but such period shall not extend to work for more than two (2) full accounting periods ending after the date of the involuntary retirement.").

The parties disagree on which accounting periods should be counted within the "Client Limitation Period."

### Plaintiffs' Challenge to the Court's Jurisdiction

{8} Defendants invoke the Court's jurisdiction pursuant to Paragraph 8 of the Settlement Agreement, which provides that "notwithstanding the dismissal of the Lawsuit, the parties expressly consent and agree that the North Carolina Business Court may retain jurisdiction of this matter for the purpose of enforcing the terms of this agreement." Plaintiffs contend that the Settlement Agreement "carved out" potential further obligations under Section 25.05 of the Partnership Agreement; therefore, Paragraph 8 does not apply. Plaintiffs do not contend that their dismissal with prejudice would preclude a separate declaratory judgment by application of *res judicata*.

{9} While Defendants could have elected to file a separate declaratory judgment action seeking an interpretation of provisions in the Settlement Agreement to resolve the disagreement between the parties, the Court concludes that it was also proper to seek that declaration by making a motion within the original action, and that Paragraph 8 of the Settlement Agreement supports the Court's jurisdiction to determine that motion. *See Estate of Barber v. Guilford County Sheriff's Dep't.,* 161 N.C. App. 658, 661, 589 S.E.2d 433, 435 (2003). It is clear that the parties now disagree as to the application of a term within the Settlement Agreement. The Court believes that this disagreement is an adequate controversy upon which to rest the Court's jurisdiction to declare the rights of the parties. *See Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 628, 518 S.E.2d 205, 207 (1999). Accordingly, Plaintiff's Motion to Dismiss Defendants' Motion for Enforcement and Interpretation of Settlement Agreement for Lack of Subject Matter Jurisdiction is DENIED.

### Application of the Term "Client Limitation Period"

{10} The Court now addresses the dispute as to the meaning of the term "Client Limitation Period." Again, the term is defined as: "the three (3) year period beginning after the partner's involuntary retirement but such period shall not extend to work for more than two (2) full accounting periods ending after the date of the involuntary retirement." The issue is when the first of the two "full accounting periods" begins and

ends, and specifically whether an accounting period to be counted must begin and end after the date of the involuntary retirement.

{11}    The Court approaches this disagreement informed by certain points on which the parties agree.  They agree that:

- the term "accounting period" means a client's fiscal year;

- the effective date of Duncan's involuntary retirement was September 30, 2009;

- the three year period following the date of involuntary retirement then ends September 30, 2012;

- the parties intended that Section 25.05 of the Partnership Agreement would nullify the non-compete provision of the Partnership Agreement, allowing Duncan to work for WOP clients in exchange for monetary payments, and the period within which this compensation obligation would apply would be for a maximum of three years, but within that three year period the limitation applies only to accounting periods that fall within the defined "Client Limitation Period;" and

- on and after October 1, 2012, Duncan can without restriction do accounting work related to any accounting period.

{12}    The disagreement which the Court must resolve is how to determine which accounting periods fall within the "Client Limitation Period," and specifically whether the period of a fiscal year that was in process at the time of the involuntary termination (that is, one which had begun prior to but had not ended by September 30, 2009) constitutes one of the "two (2) full accounting periods."   Plaintiffs contend that the term "full" modifies the term "accounting period," and that it clearly follows that a fiscal year already in progress at the date of termination cannot be a "full accounting period." Defendants contend that restriction must be measured by the "work" that is done, and the fiscal year in process at the date of termination is a "full accounting period" because the "work" to be done with reference to that year relates to the entire fiscal year, even though part of the calendar year actually began before the date of termination.

{13}    The parties actually agree that the accounting periods to be in included in the "Client Limitation Period" would be precisely two years for a client whose fiscal year

begins on October 1, because there is no partial year to be determined, the first of the two accounting periods having begun the first day after termination. The parties' disagreement can be clarified by noting how they differently apply the Settlement Agreement to clients whose fiscal year do not begin on October 1.

{14} For a client whose fiscal year begins September 1, according to Plaintiffs' interpretation, accounting periods falling within the "Client Limitation Period" would be the eleven months between October 1, 2009 and August 30, 2010, plus two full years beginning September 1, 2010 and September 1, 2011. Plaintiffs contend that for a client whose fiscal year begins November 1, the accounting periods would be the one month between October 1 and October 30, 2009, plus the two full years beginning November 1, 2009 and November 1, 2010.

{15} Pursuant to Defendants' interpretation, for a client whose fiscal year begins September 1, accounting periods falling within the "Client Limitation Period" would be the eleven months between October 1, 2009 and August 30, 2010, plus one full year beginning September 1, 2010. For a client whose fiscal year begins November 1, pursuant to Defendants' interpretation, the accounting periods to be included within the "Client Limitation Period" would the one month ending October 30, 2009, plus one full year beginning November 1, 2009.

{16} Plaintiffs and Defendants agree that the outside three year limitation applies only to accounting periods that are to be included within the "Client Limitation Period." Defendants are not then restricted within the three year period for fiscal years which begin within the three year period after the date of termination but after the expiration of two full accounting periods falling within that three years.

{17} In sum, Plaintiffs contend that a year to be counted in the "Client Limitation Period" must begin and end and be, therefore, wholly contained within the three year period after termination. Defendants contend that only one full year must be fully contained within that three year period except in the event of a fiscal year beginning October 1, and any partial year also counts as a "full" year because the accounting "work" relates to the entirety of that year which actual runs only partially during the "Client Limitation Period." Once the accounting periods are determined, the parties agree how the outside three year limitation is to be applied to those periods.

{18}    Plaintiffs contend that their construction is the only one that can give meaning to the term "full accounting period," and that Defendants' position demands that the term "full" be effectively written out of the agreement.   Plaintiffs ask that the Court declare that the language is clear and without ambiguity.  In turn, Defendants contend that Plaintiffs ask the Court to write in the term "beginning and ending," and that if there is an ambiguity, it be construed against Plaintiffs.   But Defendants also contend that the language is clear and that their reading better conforms to the actual world of accounting, in which work for any accounting period begins with planning before the fiscal year and does not end until well after the fiscal year expires.   Defendants further contend that Plaintiffs' construction actually extends the restrictions beyond the three year outside limitation period.

{19}    The Court is now called upon to interpret the wording the parties adopted in their agreements.   Defendants have not otherwise challenged the agreement as an invalid covenant against competition.  Both parties invoke settled North Carolina legal principles to support their positions.   Plaintiffs correctly note that where the language of the contract is clear and unambiguous in expressing the intent of the parties, then the Court should enforce the agreement as written.  *See Montgomery v. Montgomery*, 110 N.C. App. 234, 238─39, 429 S.E.2d 438, 441 (1993); *Asheville Mall, Inc. v. F.W. Woolworth Co.*, 76 N.C. App. 130, 132, 331 S.E.2d 772, 773─74 (1985).   Defendants correctly note that restrictions which constrain competition should be strictly construed. *See Washburn v. Yadkin Valley Bank and Trust Co.*, 190 N.C. App. 315,  323, 660 S.E.2d 577, 583 (2008).

{20}    The Court finds that the language the parties twice chose is clear so that the Court need not construe any ambiguity.   The Court understands the logic and equities of Defendants' arguments, but believes the intent is clear and that the agreements should be enforced as written.  Placing the modifying term "full" immediately prior to "accounting period" does not allow an interpretation that the word "full" was intended to modify "work" rather than the actual calendar period which must fall within the "Client Limitation Period."   The Court holds that the term "two (2) full accounting periods ending after the date of the involuntary retirement" has a clear meaning that an accounting period to be counted as one of the "two (2) full accounting periods" must both

begin <u>and</u> end after the termination date.  In all instances, the periods to be included in the "Client Limitation Period" will be less than three full calendar years.   While Defendants may be correct that some limitation on included accounting periods, depending on client elections, might extend beyond the three year period following termination, it is also true that accounting work will be totally unrestricted for some fiscal years which begin within the three year period.

{21}   The Court declares that the "Client Limitation Period" should be read and enforced to include accounting work related to the two full fiscal years beginning and ending on or after October 1, 2009, plus that year in progress on September 30, 2009. However, Defendants shall, on and after October 1, 2012, be free without compensation obligations to Plaintiffs to perform accounting work for any fiscal year whether or not such fiscal year falls within the "Client Limitation Period."

It is SO ORDERED this 29th day of March, 2011.