Howard v. IOMAXIS, LLC, 2020 NCBC 36.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

KELLY C. HOWARD and FIFTH
THIRD BANK, NATIONAL
ASSOCIATION, AS CO-TRUSTEES
OF THE RONALD E. HOWARD
REVOCABLE TRUST U/A DATED
FEBRUARY 9, 2016, AS AMENDED
AND RESTATED,

        Plaintiffs,

   v.

IOMAXIS, LLC; BRAD C. BOOR a/k/a
BRAD C. BUHR; JOHN SPADE, JR.;
WILLIAM P. GRIFFIN, III; and
NICHOLAS HURYSH, JR.,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 11679

**ORDER AND OPINION ON
PLAINTIFFS' JOINT MOTION TO
ENFORCE MEMORANDUM OF
SETTLEMENT**

1.     THIS MATTER is before the Court on Plaintiffs' Joint Motion to Enforce Memorandum of Settlement (the "Motion"). (Pls.' Joint Mot. Enforce. Mem. Settlement ("Mot. Enforce"), ECF No. 50.) The Court, having considered the Motion, materials of record, and the briefs and arguments of counsel, DENIES Plaintiffs' Motion and determines, as a matter of law, that the parties have not reached an enforceable settlement agreement, and that the litigation shall proceed on the merits of Plaintiffs' claims.

> *Johnston, Allison & Hord, P.A., by Greg C. Ahlum, David T. Lewis, and Parker E. Moore, for Plaintiff Kelly C. Howard, as co-Trustee of the Ronald E. Howard Revocable Trust u/a dated February 9, 2016, as Amended and Restated.*
>
> *Womble Bond Dickinson (US) LLP, by Johnny M. Loper and Lawrence A. Moye, IV, for Plaintiff Fifth Third Bank, NA, as co-Trustee of the*

*Ronald E. Howard Revocable Trust u/a dated February 9, 2016, as Amended and Restated.*

*Holland & Knight LLP, by Sarah G. Passeri, Phillip T. Evans (pro hac vice), and Cynthia A. Gierhart (pro hac vice), for Defendants IOMAXIS, LLC, Brad C. Boor a/k/a Brad C. Buhr, John Spade, Jr., William P. Griffin, III, and Nicholas Hurysh, Jr.*

Gale, Judge.

## I. INTRODUCTION

2. This litigation arises from a dispute regarding rights in the 51% interest in Defendant IOMAXIS, LLC ("IOMAXIS") owned by Decedent Ronald E. Howard ("Decedent Howard") at the time of his death on June 12, 2017.

3. Following a mediation that resulted in an impasse in January 2019, the parties undertook further settlement negotiations, which resulted in the execution of a Memorandum of Settlement ("MOS") in September 2019. The Court then granted a request to stay the proceedings to allow the parties to negotiate the formal settlement agreement contemplated by the terms of the MOS. The parties later advised that they were unable to agree on a formal settlement agreement.

4. Plaintiffs move to enforce the MOS, which they contend is a binding, enforceable settlement agreement. Defendants contend that the MOS cannot be enforced because the parties never agreed on certain material terms.

5. Applying the summary judgment standard of review, the Court concludes that there are no genuine issues of material fact precluding its determination that the MOS is not a binding settlement agreement as a matter of law.

## II.    FACTUAL BACKGROUND

6.    The Court recites the following facts from the record presented.  While certain immaterial facts are contested, there are sufficient uncontested facts to allow the Court to determine the enforceability of the MOS as a matter of law.  *See Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142, 215 S.E.2d 162, 164–65 (1975).

7.    Plaintiff Kelly C. Howard ("Howard") is Decedent Howard's son and the Executor of Decedent Howard's estate (the "Estate").  (Aff. Kelly C. Howard ¶ 3 ("Howard Aff."), ECF No. 64.)

8.    Decedent Howard owned a 51% membership interest in IOMAXIS at the time of his death on June 12, 2017, (Compl. ¶ 3, ECF No. 3), which Plaintiffs allege first passed to his Estate, (Compl. ¶ 4), and then was subsequently transferred to the Ronald E. Howard Revocable Trust (the "Trust"), on December 8, 2017, (Compl. ¶ 5).  Howard and Plaintiff Fifth Third Bank, NA ("Fifth Third Bank") are co-trustees of the Trust.

9.    The individually named Defendants, Brad C. Boor a/k/a Brad C. Buhr ("Buhr"), John Spade, Jr. ("Spade"), William P. Griffin, III, and Nicholas Hurysh, Jr. are IOMAXIS members, (Compl. ¶¶ 9–10, 12–13), and Buhr serves as IOMAXIS's sole managing member, (Aff. Brad C. Buhr (Redacted) ¶ 3 ("Buhr Aff."), ECF No. 62.2).

10.    Plaintiffs bring this action requesting a declaratory judgment that (i) Plaintiffs were entitled to receive distributions and payments from IOMAXIS after

Decedent Howard's death, (Compl. ¶ 73); (ii) Buhr's attempt to convert IOMAXIS from a North Carolina LLC to a Texas LLC was ineffective, and IOMAXIS's North Carolina operating agreement governs all "rights and obligations with respect to the disposition of such ownership interests[,]" (Compl. ¶ 74); and arguing that (iii) Defendants are in continuous breach of Plaintiffs' right to receive interim distributions until Decedent Howard's membership interest is redeemed, (Compl. ¶¶ 80–90). Plaintiffs also seek an accounting based on Buhr's refusal to cooperate in Plaintiffs' efforts to appraise the fair market value of IOMAXIS and Decedent Howard's membership interest, (Compl. ¶¶ 53, 68; Howard Aff. ¶¶ 4−6).

11. Defendants maintain that Howard and IOMAXIS's CEO, Bob Burleson, discussed that the Estate would be compensated for the fair market value of Decedent Howard's 51% interest in IOMAXIS at the time of his death, (Buhr Aff. ¶ 4), implying that the Estate had no continuing right in IOMAXIS other than the proportional payment of that fair market value.

12. On September 12, 2019, the parties were in the middle of a week of scheduled depositions when they decided to engage in settlement negotiations. (Buhr Aff. ¶ 6.) The parties executed the MOS after several hours of negotiations, primarily between Howard and Buhr but also including Spade and Kimberly Lawrence ("Lawrence"), a Vice President and Wealth Management Advisor for Fifth Third Bank. (Buhr Aff. ¶ 6; *see generally* Mot. Enforce Ex. 1 ("MOS"), ECF No. 50.1.) The primary settlement negotiations took place outside the presence of counsel. (Buhr

Aff. ¶¶ 6, 11.) Counsel then drafted the MOS, which all parties and their respective counsel signed. (MOS 3.)

13. Among other terms, the MOS: (1) provides that Plaintiffs will accept a sum certain ("Settlement Amount") "in full settlement of all claims, whether for damages, interest, costs, or other relief, that were or might have been brought" in this action, (MOS ¶ 1); (2) states that within thirty days of the MOS, the parties "shall use good faith best efforts to execute and finalize a formal Settlement Agreement, which will confirm the payment schedule to be adhered to by Defendants, mutual releases, and other terms to be agreed upon by and between the Parties[,]" (MOS ¶ 2); (3) sets forth a general payment schedule and interest calculation, including that Defendants shall make an initial payment within ten days of the MOS ("Initial Payment") in partial satisfaction of the Settlement Amount, which would "be nonrefundable in any event but [which] shall be credited towards any future settlement amount or judgment rendered in Plaintiffs' favor[,]" (MOS ¶ 2(a)–(d)); and (4) contains a statement that "[n]otwithstanding the foregoing, in the event the Parties are unable to agree to the terms of a final settlement such that it is necessary to continue with the litigation of the Action, Defendants agree and acknowledge that Plaintiff(s) remain entitled to take the depositions of" certain specified individuals, (MOS ¶ 4).

14. The MOS also references and attaches an "Exhibit A," a handwritten document prepared during the course of negotiations between the parties before counsel became involved, (Buhr Aff. ¶ 10), and which the Court discusses in greater

detail below. The MOS states that, "[i]n an effort to advance the Parties' mutual best interests where possible, the Parties have agreed in principle to a payment structure as generally set forth in the attached EXHIBIT A, which each party has reviewed and accepts generally for purposes of settlement." (MOS ¶ 2c.)

16. It is undisputed that Defendants remitted the Initial Payment within ten days of the execution of the MOS. (*See* Pls.' Br. Supp. Joint Mot. Enforce Mem. Settlement 3 ("Pls.' Br. Supp."), ECF No. 52.)

16. The parties agreed that Plaintiffs would circulate the first draft of the formal settlement agreement referenced in the MOS, and on October 3, 2019, Plaintiffs sent Defendants a draft of a finalized settlement agreement ("Proposed Settlement Agreement"). (Pls.' Br. Supp. 4–5.) Counsel discussed the Proposed Settlement Agreement by phone on October 4, 2019 and exchanged e-mails between October 8–11, 2019. (Ex. 1 Pls.' Br. Supp. ("Att'y E-mails"), ECF No. 52.1.)

17. Defendants took issue with several aspects of the Proposed Settlement Agreement when it was first tendered and argue that those issues illustrate why the MOS is unenforceable as a final, binding settlement agreement. Most importantly, Defendants highlight that the Proposed Settlement Agreement included two potential payment schedules, neither of which contemplated redemption of Decedent Howard's membership interest as of the date of his death. (Defs.' Br. Opp'n Pls.' Joint Mot. Enforce Mem. Settlement 7 ("Defs.' Br. Opp'n"), ECF No. 59; *see* Ex. 1 Draft Settlement Agreement 3–4, ECF No. 60.1.)

18. During the October 2019 e-mail exchange, Defendants' counsel proposed: (1) that the date of the transfer of Decedent Howard's membership interest to IOMAXIS should be treated as June 12, 2017 because IOMAXIS and its members could not honor the Settlement Amount if they had to file amended tax returns for 2017 and 2018, and the Settlement Amount was calculated to cover the cost of Plaintiffs' amended tax filing; and (2) different interest and change-of-control bonus payment terms than those included in the MOS because of "the failure of a fundamental assumption" that Defendants would be able "to pay almost half the settlement with pre-tax dollars[,]" which Defendants' counsel recognized Plaintiffs might perceive "as a 're-trade' of the Settlement[.]" (Att'y E-mails 3.)

19. Plaintiffs contest both that the parties agreed that Decedent Howard's membership interest would be treated as redeemed on the date of his death, (Pls.' Br. Supp. 8), and that Defendants' ability to pay a certain portion of the Settlement Amount with pre-tax dollars was a fundamental assumption and condition to the enforceability of the MOS, (Pls.' Br. Supp. 8–12).

20. The body of the MOS does not expressly condition settlement on the tax treatment of any payments to be made and does not address the date of redemption of Decedent Howard's membership interest. Paragraph 5—the only reference to tax implications in the body of the MOS—merely states that "[t]he Parties will agree on the degree to which the ultimate Settlement Agreement will be confidential, understanding that the terms of the settlement may have to be disclosed to [sic] Internal Revenue Service and the Parties' accountants and tax advisors." (MOS ¶ 5.)

21.     The meaning and significance of Exhibit A is central to the Parties' dispute as to whether the MOS is an enforceable settlement agreement.  Exhibit A consists of two parts.  The first relates to the Settlement Amount incorporated in paragraph 1 of the MOS.  The second relates to a schedule for paying the Settlement Amount.

22.     The first part shows that the total of the Settlement Amount equals the sum of four categories: the unpaid IOMAXIS distributions Plaintiffs claim they are owed from June 13, 2017 to October 2019, the value of a 51% proportional interest in IOMAXIS, treble damages, and IRS penalties and interest.  (MOS at Ex. A.)  The second part presents a payment structure, including an upfront payment, interest rate, late fee, and a change-of-control payment consistent with the more generalized payment structure set out in paragraph 2 of the MOS.  (MOS at Ex. A; *see also* MOS ¶ 2a–b.)

23.     Plaintiffs contend that, by attaching Exhibit A to the MOS, Defendants made a binding factual admission that the Estate had a right to continuing distributions after the date of Decedent Howard's death, precluding Defendants' contention that redemption of Decedent Howard's membership interest was effective on that date.  (*See, e.g.*, Pls.' Br. Supp. 4, 8.)[1]

---

[1] Plaintiffs also argue that the MOS does not expressly condition a settlement of this suit on Defendants' ability to pay a portion of the Settlement Amount with pre-tax dollars or otherwise reference tax consequences and that this omission reflects that such a condition was not a material term to settlement.  (Pls.' Br. Supp. 9.)  The Court's decision on the enforceability of the MOS does not depend on resolving any dispute regarding the tax treatment of settlement payments, and the Court has not considered and does not opine on the merits of either Party's position in that regard.

24. Defendants argue that while they may have agreed "to pay a fixed sum to settle all of the Plaintiffs' claims[,]" and on how the Settlement Amount would be paid in principle, they did not agree to the manner in which Plaintiffs calculated their demand for the Settlement Amount and made no binding admission that Plaintiffs are entitled to continuing distributions because Decedent Howard's membership interest in IOMAXIS has not yet been redeemed. (Defs.' Br. Opp'n 2.) Defendants contend instead that Lawrence wrote out the calculation of the Settlement Amount in Exhibit A to demonstrate how the parties might seek the most advantageous tax treatment. (Buhr Aff. ¶ 10.)

### III. PROCEDURAL HISTORY

25. Plaintiffs commenced this action on June 18, 2018, alleging Defendants breached Plaintiffs' right to receive interim distributions made after June 12, 2017, requesting an accounting of IOMAXIS, and seeking a declaratory judgment that IOMAXIS is a North Carolina LLC and the North Carolina operating agreement governs the parties' rights.

26. This case was designated as a mandatory complex business case on June 19, 2018, (Designation Order, ECF No. 1), and assigned to the undersigned on the same day, (Assignment Order, ECF No. 2).

27. The parties conducted a mediation on January 22, 2019, which resulted in an impasse. (Report Mediator 1, ECF No. 30.)

28. The parties then engaged in extensive fact discovery for nearly a year, which was scheduled to conclude on September 16, 2019. (Order Granting Sec. Mot.

Modify Case Management Order 1, ECF No. 38.) On September 12, 2019, the parties notified the Court that they had executed the MOS and requested a stay in contemplation of completing a formal settlement agreement. (Consent Third Am. Case Management Order ¶¶ 1–7 ("3rd Am. CMO"), ECF No. 48.) The Court granted a thirty-day stay on September 25, 2019, effective from September 12, 2019. (3rd Am. CMO ¶¶ 8–9.)

29. On October 14, 2019, Defendants informed the Court that the parties were unable to reach a final settlement agreement and requested that the stay be lifted. (Notice Inability Complete Settlement & Termination Stay 2, ECF No. 49.)

30. Plaintiffs filed the Motion on October 15, 2019.

31. The Motion was fully briefed and a hearing at which all parties were represented by counsel was held on December 10, 2019 (the "Hearing").

32. After the Hearing but before the Court decided the Motion, on January 24, 2020, the parties mutually requested an informal stay of the Court's consideration of the Motion until February 7, 2020 (which the Court later extended by request to February 24, 2020), based on their belief that they could resolve their dispute without the Court's intervention.

33. On February 18, 2020, the parties notified the Court that they were unable to resolve their dispute and reach a final settlement agreement. The Court allowed supplemental briefing, which was completed on March 19, 2020.

34. The Motion is now ripe for resolution.

## IV.    STANDARD OF REVIEW

35.    "In North Carolina, a party may attempt to enforce a settlement agreement by filing a motion in the action purportedly settled." *McCarthy v. Hampton*, 2015 NCBC LEXIS 70, at \*9 (N.C. Super. Ct. July 1, 2015) (citing *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 694, 682 S.E.2d 726, 732 (2009)). "In such a circumstance, the summary judgment standard of review applies." *Id.* (citing *Hardin*, 199 N.C. App at 695, 682 S.E.2d at 732).

36.    Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c). "Summary judgment is improper if any material fact is subject to dispute." *Culler v. Hamlett*, 148 N.C. App. 389, 391, 559 S.E.2d 192, 194 (2002). "[A]n issue is genuine if it is supported by substantial evidence, which is that amount of relevant evidence necessary to persuade a reasonable mind to accept a conclusion." *Fox v. Green*, 161 N.C. App. 460, 464, 588 S.E.2d 899, 903 (2003) (quoting *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002)).

37.    The moving parties bear the burden of proving the lack of a triable issue. *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001). Once the movants have met that burden, the burden shifts to the nonmoving parties to produce a forecast of evidence that demonstrates facts showing that they can establish a *prima facie* case at trial. *Austin Maint. & Constr., Inc. v. Crowder Constr. Co.*, 224 N.C.

App. 401, 407, 742 S.E.2d 535, 540 (2012). The Court must view all the presented evidence in the light most favorable to the nonmoving parties. *Dalton*, 353 N.C. at 651, 548 S.E.2d at 707.

38. Under Rule 56(c), "[s]ummary judgment may, when appropriate, be rendered against the party moving for such judgment." *A-S-P Assocs. v. Raleigh*, 298 N.C. 207, 212, 258 S.E.2d 444, 447 (1979) (citations omitted). "Summary judgment in favor of the non-movant is appropriate when the evidence presented demonstrates that no material issues of fact are in dispute, and the non-movant is entitled to entry of judgment as a matter of law." *Id.*, 258 S.E.2d at 447–48. "Summary judgment for the non-moving party should be granted only when the moving party has been given adequate opportunity to show in opposition that there is a genuine issue of fact to be resolved." *Id.*, 258 S.E.2d at 448.

## V.    ANALYSIS

39. Plaintiffs argue that the MOS is a binding settlement agreement including all material terms. (Pls.' Br. Supp. 4.) Defendants contend "[t]he MOS reflects a simple agreement in princip[le] to settle all of the Plaintiffs' claims for a fixed sum[,]" with other material terms left open for future agreement. (Defs.' Br. Opp'n 2.) Unless there are disputed issues of material fact that must be resolved before it can do so, the Court's task is to interpret the MOS as a matter of law and determine whether it is enforceable as a binding settlement agreement. *See Porter v. Ford*, 2015 NCBC LEXIS 96, at *14–15 (N.C. Super. Ct. Oct. 14, 2015.)

40. The Court is guided by principles of contract construction. "A compromise and settlement agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts." *Baker v. Bowden*, 2017 NCBC LEXIS 31, at *8 (N.C. Super. Ct. Apr. 3, 2017) (quoting *Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000)). "A valid contract requires assent, mutuality of obligation, and definite terms." *Id.* (citing *Charlotte Motor Speedway, LLC v. Cty. of Cabarrus*, 230 N.C. App. 1, 7, 748 S.E.2d 171, 176 (2013)). "Generally, a contract, or offer to contract, which leaves material portions open for future agreement is nugatory and void for indefiniteness." *N.C. Nat'l Bank v. Wallens*, 26 N.C. App. 580, 583, 217 S.E.2d 12, 15 (1975).

41. "Whenever a court is called upon to interpret a contract[,] its primary purpose is to ascertain the intention of the parties at the moment of its execution." *Certainteed Gypsum NC, Inc. v. Duke Energy Progress, LLC*, 2018 NCBC LEXIS 91, at *8 (N.C. Super. Ct. Aug. 28, 2018) (quoting *Lane v. Scarborough*, 284 N.C. 407, 409–10, 200 S.E.2d 622, 624 (1973)). "To do so, the Court must first look to the language of the contract and determine if it is clear and unambiguous." *Id.* "Whether or not the language of a contract is ambiguous [ ] is a question for the court to determine." *W & W Partners, Inc. v. Ferrell Land Co.*, LLC, 2018 NCBC LEXIS 52, at *12 (N.C. Super. Ct. May 22, 2018) (quoting *Lynn v. Lynn*, 202 N.C. App. 423, 432, 689 S.E.2d 198, 205 (2010)). "If a court finds a contract ambiguous, the intent of the parties becomes a question of fact." *Certainteed Gypsum NC, Inc.*, 2018 NCBC LEXIS

91, at *9; *see Leonard v. Pugh*, 86 N.C. App. 207, 210, 356 S.E.2d 812, 815 (1987) ("Ambiguous contracts must be interpreted by a jury[.]").

42. "An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 525, 723 S.E.2d 744, 748 (2012). "[I]f there is any uncertainty as to what the agreement is between the parties, a contract is ambiguous." *Crider v. Jones Island Club, Inc.*, 147 N.C. App. 262, 267, 554 S.E.2d 863, 867 (2001).

43. "When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court, and the court cannot look beyond the terms of the contract to determine the intentions of the parties." *Asheville Mall, Inc. v. F.W. Woolworth Co.*, 76 N.C. App. 130, 132, 331 S.E.2d 772, 773–74 (1985) (internal citations omitted); *see Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996). "It must be presumed the parties intended what the language used clearly expresses, and the contract must be construed to mean what on its face it purports to mean." *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710, 40 S.E.2d 198, 201 (1946) (internal citations omitted).

44. "An offer to enter into a contract in the future must, to be binding, specify all of the essential and material terms and leave nothing to be agreed upon as a result of future negotiations." *Young v. Sweet*, 266 N.C. 623, 625, 146 S.E.2d 669, 671 (1966). "[R]eference to a more 'complete' document does not necessarily indicate that material portions of the agreement have been left open for future negotiation. It

could mean only that immaterial matters, which are of no consequence, will be added to complete the agreement." *N.C. Nat'l Bank*, 26 N.C. App. at 584, 217 S.E.2d at 15. But where parties manifest "an intent not to become bound until the execution of a more formal agreement or document, then such an intent w[ill] be given effect." *Id.* at 583, 217 S.E.2d at 15.

45. With these settled principles in mind, the Court turns to applying them to the MOS. Plaintiffs rely on paragraph 1 of the MOS, which states that the Plaintiffs shall accept the Settlement Amount "in full settlement of all claims, whether for damages, interest, costs, or other relief, that were or might have been brought in" this lawsuit. (MOS ¶ 1.) Standing alone, this reference to a "full settlement of all claims" might suggest that the parties had reached a comprehensive, enforceable settlement. *See DeCristoforo v. Givens*, 2015 NCBC LEXIS 56, at *30 (N.C. Super. Ct. May 29, 2015) ("A clear release of claims, absent proof of a contrary intent, is effective to discharge all claims pending in the litigation." (citing *Hardin*, 199 N.C. App. at 699, 682 S.E.2d at 735)).

46. However, another provision of the MOS at least as strongly suggests that the parties had not reached a final resolution, providing that: "[n]otwithstanding the foregoing, in the event the Parties are unable to agree to the terms of a final settlement such that it is necessary to continue with the litigation of the Action, Defendants agree and acknowledge that Plaintiff(s) remain entitled to take depositions of" specified individuals. (MOS ¶ 4.)

47.     At the Hearing, Plaintiffs invited the Court simply to disregard this language from paragraph 4 of the MOS as mere surplusage, which, according to counsel, was included only to account for how the parties would proceed with discovery should the Court deem the MOS unenforceable. The Court finds Plaintiffs' argument unavailing.

48.     The doctrine of surplusage dictates "that no word in a contract is to be treated as surplusage or redundant if any reasonable meaning consistent with the other parts can be given to it[.]" *Williams v. Nationwide Mut. Ins. Co.*, 269 N.C. 235, 239, 152 S.E.2d 102, 106 (1967). Furthermore, the Court must, if possible, give meaning to each contract provision. *See WakeMed v. Surgical Care Affiliates, LLC*, 243 N.C. App. 820, 824, 778 S.E.2d 308, 312 (2015) ("[O]ur courts adhere to the central principle of contract interpretation that [t]he various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect." (quoting *In re Foreclosure of a Deed of Trust*, 210 N.C. App. 409, 415, 708 S.E.2d 174, 178 (2011))); *see also Jones v. Casstevens*, 222 N.C. 411, 413–14, 23 S.E.2d 303, 305 (1942) ("Since the object of construction is to ascertain the intent of the parties, the contract must be considered as an entirety. The problem is not what the separate parts mean, but what the contract means when considered as a whole.").

49.     The doctrine therefore affords the Court no basis to impose an inference that would not only give a contrary meaning to the plain language of paragraph 4 but would also set paragraph 4 at odds with other provisions of the MOS. *See Durham*

*Coca-Cola Bottling Co. v. Coca-Cola Bottling Co. Consol.*, 2003 NCBC LEXIS 5, at *36 (N.C. Super. Ct. Apr. 28, 2003) ("The court cannot make a new or different contract for the parties, and the court will not imply terms to which the parties did not agree.").

50.     There are other provisions beyond paragraph 4 that speak to whether the parties understood that future agreement on additional terms was necessary to reach a final, enforceable agreement.  For example, paragraph 2a of the MOS provides "[t]he Initial Payment shall be nonrefundable in any event but shall be credited towards any *future settlement amount* or *judgment rendered in Plaintiffs' favor*." (MOS ¶ 2a (emphasis added).)  If, as Plaintiffs contend, the parties had fully and finally resolved all claims, there would be no reason to determine "future settlement amounts" or for the Court to render a future judgment.[2]

51.     Other provisions within paragraph 2 likewise clearly reflect that further negotiations were necessary before a binding settlement agreement could be reached, including that: "[t]he parties agree that within thirty (30) days of the date of this Memorandum they shall use good faith best efforts to execute and finalize a formal Settlement Agreement, which will confirm the payment schedule to be adhered to by

---

[2] Plaintiffs argue that the fact that the parties agreed to a non-refundable Initial Payment, which Defendants have paid, supports their position that the MOS is enforceable as a binding, final settlement agreement.  (*See* Pls.' Suppl. Br. Supp. Pls.' Mot. Enforce Mem. Settlement 1–2 ("Pls.' Suppl. Br."), ECF No. 68; *see also* Defs.' Reply Pls.' Suppl. Br. Supp. Pls.' Mot. Enforce Mem. Settlement 3, ECF No. 69.)  Plaintiffs also report that Defendants have maintained that the Initial Payment must be returned upon a finding that the MOS is not a final, enforceable settlement agreement. (*See* Ex. 1 Pls.' Suppl. Br., ECF No. 68.1.)  The issue of whether the Initial Payment must be returned has not been squarely presented to the Court, however, and the Court's determination of whether the MOS is a final, enforceable settlement agreement does not invoke that issue.

Defendants, mutual releases, and other terms to be agreed upon by and between the Parties." (MOS ¶ 2.)

52. The Court therefore concludes that the various MOS provisions, read in harmony to give meaning to each, reflect a mutual desire to settle all claims but an intent "not to become bound until the execution of a more formal agreement[.]" *N.C. Nat'l Bank*, 26 N.C. App. at 583, 217 S.E.2d at 15; *see McCarthy*, 2015 NCBC LEXIS 70, at \*12–14; *see also Gao v. Sinova Specialties, Inc.*, 2018 NCBC LEXIS 53, at \*16– 17 (N.C. Super. Ct. May 29, 2018). As such, although the MOS includes certain hallmarks of a settlement agreement such as a release of all claims, a dollar amount, and payment schedule, because the parties expressed an intent not to be bound in final settlement until they concluded negotiation of further terms, the MOS is, at most, an agreement to negotiate a formal, binding settlement agreement as provided by paragraph 2. *See Remi Holdings, LLC v. IX WR 3023 HSBC Way L.P.*, 2016 NCBC LEXIS 110, at \*16–19 (N.C. Super. Ct. Dec. 12, 2016); *RREF BB Acquisitions, LLC v. MAS Props., LLC*, 2015 NCBC LEXIS 61, at \*50–58 (N.C. Super. Ct. June 9, 2015); *see also Sony Ericsson Mobile Commc'ns. USA, Inc. v. Agere Sys.*, 2007 NCBC LEXIS 28, at \*7–16 (N.C. Super. Ct. Aug. 27, 2007).

53. While not essential to the Court's determination, the Court further finds that the parties' conduct after the MOS was executed is further evidence of that mutual intent. *See Durham Coca-Cola Bottling Co.*, 2003 NCBC LEXIS 5, at \*20 ("In addition to the language chosen by the parties, a court may examine the subsequent behavior of the parties to determine whether a contract was made." (citing *Indus. &*

*Textile Piping, Inc. v. Indus. Rigging Servs., Inc.*, 69 N.C. App. 511, 513–14, 317 S.E.2d 47, 49, *disc. review denied*, 312 N.C. 83, 321 S.E.2d 895 (1984))); *see also N.C. Nat'l Bank*, 26 N.C. App. at 584, 217 S.E.2d at 15 ("The subsequent conduct and interpretation of the parties themselves may be decisive of the question as to whether a contract has been made even though a document was contemplated and has never been executed.").

54.     When initially requesting a stay so that they could negotiate a formal settlement agreement, the parties did not represent to the Court that a final settlement agreement had been reached.  To the contrary, they requested the stay "to allow the Parties the full opportunity to structure, finalize, and execute a formal settlement agreement, as well as any other additional documentation necessary to consummate the settlement, in a manner agreeable to all parties."  (Proposed Consent Order Third Modification Case Management Order 2–3 ("Proposed 3rd CMO"), ECF No. 47.)  Moreover, the parties submitted with their request for a stay a proposed amended case management order that provided that discovery would continue "[i]f the parties . . . failed to execute additional documentation necessary to consummate the settlement[.]"  (Proposed 3rd CMO 3.)  Such conduct strongly suggests that the Parties did not consider the MOS to be a final and binding settlement agreement.

55.     In sum, the Court concludes that the express language of the MOS unambiguously reflects a mutual understanding that all issues necessary to a binding settlement agreement had not been resolved.  As a result, the Court need not resolve the parties' dispute over whether they had agreed on the redemption date of Decedent

Howard's membership interest had the settlement been consummated or what the tax effect of the settlement might have been, and whether those terms were material and unambiguously stated in the MOS and Exhibit A. (*See* Defs.' Br. Opp'n 6–7, 11); *see also WakeMed*, 243 N.C. App. at 825, 778 S.E.2d at 312 ("The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous.").

56. Accordingly, the Court determines that the MOS does not constitute a full and final settlement agreement of all claims as a matter of law. *See A-S-P Assocs.*, 298 N.C. at 212, 258 S.E.2d at 448 (affirming trial court's grant of summary judgment to non-moving parties on all claims where "both plaintiff and defendant were afforded adequate opportunity to and did submit evidentiary materials on all aspects of the case" and the claims could be decided as a matter of law); *Blades v. Raleigh*, 280 N.C. 531, 544, 187 S.E.2d 35, 43 (1972) (reversing and remanding for entry of judgment in favor of non-moving defendants where neither plaintiffs nor defendant made a "showing of the existence of a genuine issue of fact for trial[, and] . . . [t]he record disclose[d] none"); *see generally Bland v. Bland*, 21 N.C. App. 192, 203 S.E.2d 639 (1974) (affirming summary judgment against moving party).

## VI. CONCLUSION

57. For the reasons stated above, Plaintiffs' Motion is DENIED, and the Court determines, as a matter of law, that the MOS is not an enforceable, binding settlement agreement.

58. This case is subject to all present and future orders of the Chief Justice of the Supreme Court of North Carolina and the Chief Justice of the North Carolina Business Court regarding COVID-19. Absent mutual agreement to do so earlier, the parties shall confer and submit a proposed fourth case management order within twenty (20) days of the date that the extension on further filings in this Court expires.

SO ORDERED, this the 1st day of May, 2020.


/s/ James L. Gale
James L. Gale
Senior Business Court Judge